IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


ANTHONY BLUE
STEVEN BROWN                                    *
WILBERT DELANO
GREGORY HAMMOND                                 *
SEDRIC HOLLEY
RUSSELL HOPKINS                                 *
JOHNNIE JAMES
TYRELL POLLEY                                   *
MAYNARD SNEED
ROBERT WILSON                                   *
                                                            Civil Action No. RDB-16-945
         Plaintiffs,                            *


                    v.                          *


DEPARTMENT OF PUBLIC SAFETY AND                 *
CORRECTIONAL SERVICES
STEPHEN MOYER                                   *
DAYENA M. CORCORAN
RICHARD MILLER                                  *


         Serve On:                              *
Michael O. Doyle, Assistant Attorney General
Deputy Counsel                                  *
Office of the Attorney General
Department of Public Safety                     *
and Correctional Services
300 East Joppa Road, Suite 1000                 *
Towson, Maryland 21286
                                                *
         Defendants.
                                                *
         *      *      *      *      *      *      *      *      *      *

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF**
**AND COMPENSATORY AND PUNITIVE DAMAGES**

## INTRODUCTION

1.      Plaintiffs Steven Brown, #299894, Wilbert Delano, #346138, Gregory Hammond, #407534, Sedric Holley, #358967, Russell Hopkins, #438457, Johnnie James, #339779, Tyrell Polley, #443422, Maynard Sneed, #293657, and Robert Wilson, #416017, inmates and former inmates at Roxbury Correctional Institution ("RCI"), bring this action against the Maryland Department of Public Safety and Correctional Services, Stephen Moyer, Dayena Corcoran, and Richard Miller for discriminating against them because they are blind, denying them access to the administrative grievance process and to the courts, and subjecting them to conditions of incarceration that have caused serious harm and create a substantial risk of such harm. Defendants' actions violate Titles II and IV of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165, 12201–12213, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and the Eighth and Fourteenth Amendments to the United States Constitution.  On the basis of these violations, Plaintiffs seek a declaratory judgment, injunctive relief, compensatory and punitive damages, attorneys' fees and costs, and any other available relief.

2.      Because Plaintiffs are blind, Defendants deny Plaintiffs private and independent access to vital services, programs, and activities available to inmates at RCI.  Defendants' discrimination and their failures to make reasonable modifications to their policies and provide appropriate auxiliary aids and services threaten Plaintiffs' health and safety and deprive them of the equal enjoyment of benefits and opportunities available to the rest of the prison population.

3.      Plaintiffs are not afforded private, independent, and effective access to the Inmate Handbook or orientation materials, which inform inmates of their rights and responsibilities and

the rules governing life inside RCI.  As a result, Plaintiffs are deprived of vital information and exposed to potential disciplinary action for unknowing violations of RCI's rules.

4.      Plaintiffs are not afforded private, independent, and effective access to initiating and completing the administrative grievance process or pursuing claims in state or federal courts because Defendants do not provide the necessary materials and services in a format accessible to the blind.  As a result, Plaintiffs are forced to rely on sighted inmates, when one can be persuaded to help.  This system exposes Plaintiffs to a substantial risk of exploitation and abuse.

5.      Defendants discriminate against Plaintiffs because of Plaintiffs' blindness in the administration of various work programs through which inmates receive valuable vocational training and earn wages and credits towards their release.

6.      Defendants do not provide the necessary reasonable modifications and auxiliary aids and services that would allow Plaintiffs equal access to educational programming available to inmates at RCI.  Nor do they provide Plaintiffs with instruction of equal quality to that available to sighted inmates.

7.      Defendants do not provide the necessary reasonable modifications and auxiliary aids and services that would allow Plaintiffs to navigate RCI's facilities independently.  As a result, Plaintiffs are forced to rely on sighted inmates, again exposing them to a substantial risk of exploitation and abuse and denying them the equal use of the facilities.

8.      Defendants do not provide the necessary reasonable modifications and auxiliary aids and services that would allow Plaintiffs to access the prison mail services independently and privately, again forcing Plaintiffs to rely on sighted inmates.  As a result of Defendants' failures, not only Plaintiffs, but their friends and families have been exposed to abuse and the substantial risk of abuse.

9.      Based on their underlying convictions and sentences, some Plaintiffs should be housed at less restrictive facilities.  By segregating these Plaintiffs with other blind prisoners at RCI, Defendants have denied them their right to be incarcerated in the least restrictive environment consistent with their classification security levels.

10.     Despite the fact that inmate safety is one factor Defendants are required to consider when implementing inmate housing assignments, Defendants fail to take the safety concerns presented by Plaintiffs' blindness into account when placing them in cells.  As a result, some Plaintiffs are double-celled at substantial risk to their safety and well-being.

11.     On March 24, 2016, Plaintiffs filed a Motion for Appointment of Counsel under 28 U.S.C. § 1915.  ECF 1.  This Court treated that motion as a Complaint and on April 4, 2016, granted the motion for the purpose of filing an Amended Complaint and a Motion to Proceed in Forma Pauperis.  ECF 2.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff Anthony Blue, #141205, instructed undersigned counsel to dismiss his complaint, and a separate Notice of Dismissal has been filed.

13.     Plaintiff Steven Brown, #299894, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI, which is located at 18701 Roxbury Road, Hagerstown, Maryland 21746.  Mr. Brown is blind and is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

14.     Plaintiff Wilbert Delano, #346138, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI. Mr. Delano is blind and is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

15.     Plaintiff Gregory Hammond, #407534, was an inmate committed to the custody of the Commissioner of Correction and assigned to RCI from September 24, 2015, to August 8, 2016.  On August 8, 2016, Mr. Hammond was released by court order to the Dorchester County Detention Center, 829 Fieldcrest Road, Cambridge, MD 21613.  At all times relevant to this action, Mr. Hammond was blind and was a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, could not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

16.     Plaintiff Sedric Holley, #358967, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI.  Mr. Holley is blind and is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

17.     Plaintiff Russell Hopkins, #438457, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI. Mr. Hopkins is blind and is a "qualified individual with a disability" as defined in 42 U.S.C §

12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

18.     Plaintiff Johnnie James, #339779, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI.  Mr. James is blind and is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

19.     Plaintiff Tyrell Polley, #443422, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI.  Mr. Polley is blind and is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

20.     Plaintiff Maynard Sneed, #293657, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI. Mr. Snead is blind and is a "qualified individual with a disability" as defined in 42 U.S.C § 12131(2) who, by reason of such disability, may not be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department of Public Safety and Correctional Services or be subjected to discrimination by it.

21.     Plaintiff Robert Wilson, #416017, at all times relevant to this action, was and is an inmate committed to the custody of the Commissioner of Correction and assigned to RCI.

Mr. Wilson is blind and is a "qualified individual with a disability" as defined in 42 U.S.C §

12131(2) who, by reason of such disability, may not be excluded from participation in or be

denied the benefits of the services, programs, or activities of the Department of Public Safety and

Correctional Services or be subjected to discrimination by it.

22.     Defendant Department of Public Safety and Correctional Services ("DPSCS," or

"the Department") is established as a principal department of state government pursuant to

Correctional Services Article § 2-101.  The Maryland Division of Correction ("DOC") is a unit

of the Department, CSA § 2-201, organized to incarcerate certain criminal defendants sentenced

by Maryland courts.  The DOC includes RCI.

23.     Defendant Stephen Moyer is Secretary of DPSCS.  The Secretary of DPSCS is

responsible for the administration of the Department.  CSA § 2-102.  He is aware of DPSCS's

policies and practices regarding inmates, including policies and practices regarding blind

inmates, including Plaintiffs.  He is aware of the requirements of federal law, including the

Eighth and Fourteenth Amendments to the United States Constitution, the ADA, and Section 504

as they pertain to the treatment of individuals incarcerated at RCI.  He is sued in his individual

and official capacities.

24.     Defendant Dayena M. Corcoran is the Commissioner of Correction ("the

Commissioner"). The Commissioner is responsible for the administration of the DOC and is

responsible to the Secretary of DPSCS and the Governor for the well-regulated incarceration of

inmates and the supervision of correctional staff.  CSA §§ 3-203 *et seq.*  She is also responsible

for responding to appeals of complaints and grievances brought by individuals in DOC custody,

including Plaintiffs.  She is aware of DPSCS and DOC policies and practices regarding inmates,

including policies and practices regarding blind inmates, including Plaintiffs.  She is aware of the

requirements of federal law, including the Eighth and Fourteenth Amendments to the United States Constitution, the ADA, and Section 504 as they pertain to the treatment of individuals incarcerated at RCI.  She is sued in her individual and official capacities.

25.     Defendant Richard Miller is the Warden of RCI and is responsible for the governance, discipline, and policies of that institution.  CSA § 3-211.  Warden Miller is the legal custodian of all individuals incarcerated at RCI, including Plaintiffs, and is responsible for their safe, secure, and humane treatment.  He is aware of DPSCS's policies and practices regarding inmates, including policies and practices regarding blind inmates, including Plaintiffs.  He is aware of the requirements of federal law, including the Eighth and Fourteenth Amendments to the United States Constitution, the ADA, and Section 504 as they pertain to the treatment of individuals incarcerated at RCI.  He is aware of complaints brought by blind inmates at RCI regarding conditions of confinement, including the conditions set forth herein.  He is sued in his individual and official capacities.

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a).

27.     Venue is proper in this District under 28 U.S.C. § 1391(b), as all Defendants reside in this District and a substantial part of the events giving rise to the claims herein occurred within this District.

## STATEMENT OF FACTS

### A.     INACCESSIBLE   INMATE   HANDBOOK   AND   ORIENTATION MATERIALS

28.     All sighted inmates are provided with a copy of the DOC Inmate Handbook upon entering the prison system.  Inmates also receive orientation materials with information specific to the institution in which they are incarcerated.

8

29.    Plaintiffs have physical disabilities that interfere with their ability to read and write printed text without auxiliary aids and services and reasonable modifications.  With appropriate auxiliary aids and services and reasonable modifications, however, Plaintiffs are capable of reading and writing textual material.

30.    Defendants have not provided Plaintiffs with an accessible copy of the DOC Inmate Handbook or RCI orientation materials.  By denying Plaintiffs these materials in an accessible form, Defendants fail to provide equal and effective communication to Plaintiffs of their rights and responsibilities as inmates at RCI.  This failure exposes Plaintiffs to the risk of discipline or confrontations with correctional officers or other inmates because of unknowing rule violations.

31.    With reasonable modifications to Defendants' policies and procedures and appropriate auxiliary aids and services, Plaintiffs could effectively access the DOC Inmate Handbook and RCI orientation materials.

**B.     DENIAL OF ACCESS TO THE GRIEVANCE PROCESS AND TO THE COURTS**

32.    To exhaust the grievance process, inmates must complete and submit a number of print forms, including the informal complaint form, the Administrative Remedy Procedure form, the appeal form, and others, together with the submission of written documentation.  Inmates also must read responses from the Warden, the Commissioner, the Inmate Grievance Office, administrative law judges, and state and/or federal judges.  These are transmitted to inmates in hard-copy, written form.

33.    Defendants do not supply blind inmates with any grievance form, response, notice, or decision in an accessible format.  Unlike their sighted counterparts, Plaintiffs have no

way to initiate and complete the grievance or court processes privately and independently. Instead, they must rely on sighted inmates to help them.

34.     RCI has a library that contains law books.  The library materials are critical to allowing inmates to understand the process for filing and pursuing grievances and lawsuits and to conduct research to support their claims.  Inmates also may request copies of court opinions from Library Assistance for State Institutions, a program administered by DPSCS.

35.     There are computers and typewriters in RCI's library that are available for inmates to use to write legal documents, including court pleadings.  Inmates may also use pen and paper.

36.     Sighted inmates can access the library's research materials independently and privately.  Plaintiffs cannot.  Defendants have not supplied Plaintiffs with any auxiliary aids or services or undertaken any reasonable modifications to allow Plaintiffs to independently access the electronic and hard-copy materials in the library or materials provided by Library Assistance for State Institutions.  As a result, Plaintiffs have been denied effective and equal access to the grievance process and state and federal court because they are forced to rely on sighted inmates to relay the relevant procedures to them and to conduct their legal research for them.

37.     Sighted inmates may write their own legal documents.  Plaintiffs cannot. Defendants have not provided Plaintiffs with the auxiliary aids or services or reasonable modifications to allow them to write independently.  As a result, Plaintiffs have been denied effective and equal access to the grievance process and state and federal court, because they must rely on sighted inmates to write for them.

38.     When pursuing legal action with the help of sighted inmates, Plaintiffs have no way of verifying that the information they intend to submit is accurately conveyed, that the

requested actions are taken, that the intended arguments are made, that the proper documentation is attached, or that reliable law is cited.

39.     Requiring Plaintiffs to rely on sighted inmates for their legal needs also exposes Plaintiffs to extortion, sexual exploitation, and violence.

40.     Plaintiffs have been forced to pay sighted inmates in cash or commissary items to receive help with the grievance and court processes and to access the benefits of the library.

41.     Plaintiffs have had their grievances and lawsuits dismissed due to mistakes by sighted inmates.

42.     Plaintiffs have been unable to initiate or continue the grievance or court processes because no sighted inmate would help them or because they cannot afford the help or risk disclosing personal information, including the nature of their underlying conviction, to another inmate.

43.     Staff members at RCI have told Plaintiffs that they are not allowed to seek assistance from sighted inmates to file grievances.  Staff members also have retaliated against sighted inmates who have helped Plaintiffs by stripping them of privileges, such as truncating their recreational or shower time and transferring them out of jobs.  These actions further limit Plaintiffs' access to the grievance and court processes.

44.     Staff members at RCI also have retaliated against Plaintiffs for participating in this litigation by taking away or restricting privileges, harassing Plaintiffs, threatening to confiscate their property, and, in the case of one case manager, refusing to meet with Plaintiffs assigned to her.

45.     Defendants have failed to make reasonable modifications and provide auxiliary aids and services that would allow Plaintiffs to exchange confidential, written communications

with their attorneys.  Because Plaintiffs have no way of reading their mail without help from sighted inmates, if they wish to review documents prepared by their attorneys or send any document in writing to an attorney, they must waive their attorney-client privilege.  This severely restricts their access to effective legal representation.

46.     Plaintiffs have protested their inability to privately, independently, and effectively access the grievance and court processes to Defendants and their employees.  Plaintiffs also have told Defendants and their employees, including Warden Miller, that their dependence on sighted inmates to access the grievance and court processes puts them in danger.  In addition, in 2012, an administrative law judge ruled that DOC violated the law by failing to allow blind inmates access to library services.

47.     With reasonable modifications to Defendants' policies and procedures and appropriate auxiliary aids and services, Plaintiffs could privately, independently, and effectively access the grievance process, the library, Library Assistance for State Institutions, and the courts.

## C.     EXCLUSION FROM WORK PROGRAMS

48.     Inmates within DPSCS may earn diminution credits and wages through work assignments.  Each diminution credit correlates to a one day reduction in an inmate's sentence.  An inmate may earn five industrial credits each month during which he satisfactorily completes assigned work tasks.  Additionally, an inmate may earn up to ten credits each month in which he shows satisfactory progress in special work projects or programs selected by the Commissioner and approved by the Secretary of DPSCS.  Work assignments also provide valuable vocational training for re-entry.

49.     Plaintiffs are qualified individuals with a disability whose blindness should not prevent them from accessing Defendants' work programs.   Nevertheless, Defendants have

12

denied Plaintiffs placement in or removed them from certain jobs based on unfounded safety concerns and stereotypes about the capabilities of blind individuals.  Blind inmates offered work placement have been relegated to jobs that pay less and offer fewer diminution credits and opportunities for vocational training.

50.     The Department does not allow inmates with no vision to participate in Maryland Correctional Enterprises ("MCE"), an organization located in the DOC in which inmates are employed to provide goods and services to state and local governments and non-profit organizations.  Inmates employed by MCE receive on-the-job training and higher wages than inmates in other jobs.  Plaintiffs desire to participate in MCE.

51.     Defendants have failed to make reasonable modifications to their policies and procedures that would allow Plaintiffs to be eligible for work release programs.  Participation in work release programs is critical to qualifying for parole.  As a result of Defendants' discriminatory policies, Plaintiffs must remain incarcerated in more restrictive conditions than necessary, and for longer than necessary, because of their blindness.

52.     Plaintiffs have protested Defendants' discriminatory treatment in administering work programs to Defendants and their employees.

53.     With reasonable modifications to Defendants' policies and procedures and appropriate auxiliary aids and services, the work programs at RCI could be made equally available to Plaintiffs.

**D.     EXCLUSION FROM EDUCATIONAL PROGRAMS**

54.     Inmates within DPSCS can take adult basic education classes and GED classes. Through these classes, inmates receive valuable educational benefits crucial to finding employment upon their release.  They also may earn five education credits each month toward

their sentences when they show satisfactory progress in vocational, educational, and training courses.

55.     Classes at RCI are not accessible to Plaintiffs.  The classes use printed materials that are not provided to blind inmates in an accessible format.  Instruction to Plaintiffs is therefore less effective than instruction to sighted inmates.  Nor are auxiliary aids and services, like talking calculators, available.  Plaintiffs who are enrolled in the GED class must try to do all of the math in their heads, while sighted inmates may use calculators.

56.     Plaintiffs have been forced to terminate their enrollment in classes because they were denied reasonable modifications and access to appropriate auxiliary aids and services, such as audio recordings and additional time for taking exams.

57.     While sighted inmates at RCI may learn basic literacy through adult basic education classes, Plaintiffs have no access to literacy programs, because Defendants have refused to provide competent instruction in Braille.  Certified teachers instruct sighted inmates, but Defendants have refused to hire a professional Braille instructor.

58.     Plaintiffs have protested Defendants' discriminatory treatment in educational programs to Defendants and their employees.  In addition, in 2012, an administrative law judge found that blind inmates were unable to fully participate in educational classes because they were not given any help to complete written assignments.  The judge also ruled that the DOC violated the law by failing to make reasonable accommodations to allow blind inmates access to Braille lessons and other library services, such as reading material.

59.     With reasonable modification to Defendants' policies and procedures and the provision of appropriate auxiliary aids and services, the educational programs at RCI could be made equally available to Plaintiffs.

E.   **DENIAL OF REASONABLE MODIFICATIONS AND AUXILIARY AIDS AND SERVICES TO ALLOW PLAINTIFFS TO INDEPENDENTLY NAVIGATE AND ACCESS RCI FACILITIES AND SERVICES**

60.   RCI consists of several separate buildings surrounding a central courtyard. Services critical to inmates' daily lives, such as the gym, medical center, chow hall, and educational programs, are housed in separate buildings.  One of the issues for blind persons is learning to be independently mobile.  Training in the use of a white cane and other mobility devices is essential to promoting safe movement for blind persons.

61.   Defendants have never provided Plaintiffs with any mobility or orientation training to allow them to navigate RCI's facilities independently.  Nor have they provided Plaintiffs the auxiliary aids and services, like white canes, that would afford them that independence.  Instead, RCI assigns blind inmates "walkers"—sighted inmates who are paid to guide blind inmates through the facilities.

62.   The walker program deprives Plaintiffs of the independence sighted inmates enjoy.  While sighted inmates may, at certain times of day, choose which part of RCI to visit, Plaintiffs must rely on their walkers to take them where they want to go.  If their walkers do not want to go where they want to go, Plaintiffs are stuck.

63.   By facilitating dependence on other inmates, the walker program also exposes Plaintiffs to a substantial risk of extortion, exploitation, and violence.  There is no formal screening process in place to ensure that inmates employed as walkers have no history of aggressive behavior or extortion.  Plaintiffs have been threatened by their walkers when they asked the walkers to perform tasks the walkers did not want to do, or when they complained about their walkers' behavior.

64.     There is no system in place to allow Plaintiffs to access any prison services that require reading and/or writing.  For example, walkers do not have to help Plaintiffs fill out commissary requests.  Plaintiffs have been forced to pay sighted inmates in cash or commissary items to make commissary requests.

65.     Plaintiffs have protested the inaccessibility of RCI's facilities and services to Defendants and their employees.  Plaintiffs also have told Defendants and their employees that their dependence on sighted inmates to navigate RCI puts them in danger.

66.     With reasonable modifications to Defendants' policies and procedures and the provision of appropriate auxiliary aids and services, the facilities and services at RCI could be made equally available to Plaintiffs.

**F.     INACCESSIBLE INSTITUTIONAL MAIL SERVICES**

67.     Inmates at RCI are able to send and receive mail.

68.     Defendants have failed to provide Plaintiffs with the necessary auxiliary aids and services and reasonable modifications to allow them to read and write mail privately and independently.  Instead, Plaintiffs are forced to rely on sighted inmates to use the mail services.

69.     Plaintiffs' mail often includes personal and confidential information, legal information (including privileged correspondence with their attorneys), and contact information for their friends and family.  Requiring blind inmates to give sighted inmates access to this information in order to use the mail makes blind inmates vulnerable to exploitation, extortion, and violence.

70.     Sighted inmates who assist Plaintiffs have used the contact information for Plaintiffs' friends and families to exploit their correspondents and cause them to feel unsafe.

71.     Plaintiffs have protested the inaccessibility of the mail services to Defendants and their employees.  Plaintiffs also have told Defendants and their employees that their dependence on sighted inmates to access the mail puts them and their families and friends in danger.

72.     With reasonable modifications to Defendants' policies and procedures and appropriate auxiliary aids and services, Plaintiffs could privately, independently, and effectively use the institutional mail services.

**G.      SEGREGATING  BLIND  INMATES  AT  RCI  REGARDLESS  OF CLASSIFICATION SECURITY LEVEL**

73.     Inmates are assigned to facilities within the DOC based on their classification security levels.  An inmate's classification security level is determined by a number of factors, including the severity of the inmate's offense, the length of his sentence, and his history of violence.

74.     RCI is a medium level II security prison.  It is designed for prisoners who pose a risk of violence, are above moderate risk of escape, or who have demonstrated through institutional adjustment that they do not require maximum security status.  Prisoners at RCI are more heavily supervised and more restricted in their movement than prisoners at medium level I, minimum, and pre-release security prisons.  They do not have access to all of the same services and programs available at lower-security facilities.

75.     Defendants segregate blind prisoners at RCI.  This policy denies Plaintiffs with classification security levels lower than medium level II the benefit of a less restrictive environment and programs available to sighted inmates with their same classification security levels.

76.     Plaintiffs have protested their segregation at RCI to Defendants and their employees.

17

### H.       DOUBLE-CELLING BLIND INMATES AT RISK TO THEIR SAFETY

77.     Maryland prisons provide single-cell, double-cell, and even dormitory-style housing for inmates.  Cell assignments are designed to meet different needs, including the safety of individual inmates.

78.     Single-cell housing can be necessary for the safety of blind inmates, but Defendants do not take safety concerns resulting from an inmate's blindness into account when distributing cell assignments.

79.     Blind inmates can be more vulnerable to theft and less able to forestall or defend against attacks when housed in cells with other inmates.

80.     Blind inmates are more vulnerable to acts of aggression when housed in cells with other inmates, because their cellmates may be provoked by their disability and behavior resulting from their disability, including bumping into a cellmate or a cellmate's possessions or failing to notice and clean up a mess, and because blind inmates may be perceived as more vulnerable.

81.     If a blind inmate is housed with a sighted inmate on whom he is dependent, such as for reading, writing, and/or movement around the prison, the risk of abuse and exploitation increases dramatically.

82.     Some Plaintiffs are currently housed in double cells, including with sighted inmates on whom they are dependent for reading, writing, and mobility due to Defendant's failure to provide reasonable and necessary modifications, aids, and services for blind inmates.

83.     Previously all blind inmates housed at RCI, including all Plaintiffs, were single-celled.  Defendants have the capacity to give blind inmates the option to be housed in single cells.

84.     Plaintiffs have told Defendants and their employees that double-celling puts them in danger.

85.     With reasonable modifications to policies and procedures regarding cell assignments, Plaintiffs could be safely incarcerated.

## CLAIMS FOR RELIEF

### COUNT I

### (42 U.S.C. § 1983 – DENIAL OF ACCESS TO THE COURTS, IN VIOLATION OF AMEND. XIV, U.S. CONSTITUTION)

### (DEFENDANTS MOYER, CORCORAN, AND MILLER)

Plaintiffs adopt and incorporate the preceding paragraphs as they appear above and say further:

86.     42 U.S.C. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

87.     Plaintiffs bring suit pursuant to 42 U.S.C. § 1983 to seek redress for Defendants' violation of their Fourteenth Amendment rights to access the courts.  Defendants fail to make reasonable modifications and/or provide auxiliary aids and services to make the grievance process, courts, and library accessible to Plaintiffs, compel Plaintiffs to utilize the assistance of sighted inmates at risk to Plaintiffs' safety and well-being, retaliate against Plaintiffs for attempting to exercise their right to access the courts, and render the services of sighted inmates unavailable to Plaintiffs by retaliating against sighted inmates who provide assistance.

88.     As a result of Defendants' policies and practices, Plaintiffs have been unable to effectively initiate or complete the grievance or court processes or communicate effectively with their attorneys.  Plaintiffs also have had their grievances and lawsuits dismissed due to the errors of the sighted inmates upon whom Plaintiffs are forced to rely.

89.     Plaintiffs have been damaged by the conduct of Defendants, and Plaintiffs are entitled to compensatory damages in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00).

90.     The conduct of Defendants demonstrates reckless disregard for the civil rights of Plaintiffs, and punitive damages in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00) should be awarded to Plaintiffs as a punishment and to deter similar conduct in the future.

## COUNT II

**(42 U.S.C. § 1983 – SUBJECTING PLAINTIFFS TO SERIOUS HARM AND A SUBSTANTIAL RISK OF SERIOUS HARM IN VIOLATION OF AMEND. VIII, U.S. CONSTUTION, AS APPLIED THROUGH AMEND. XIV)**

**(DEFENDANTS MOYER, CORCORAN, AND MILLER)**

Plaintiffs adopt and incorporate the preceding paragraphs as they appear above and say further:

91.     The Eighth Amendment to the United States Constitution, which has been incorporated against the states by the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

92.     Plaintiffs bring suit pursuant to 42 U.S.C. § 1983 to seek redress for Defendants' infliction of cruel and unusual punishments.  Defendants fail to reasonably modify their policies or procedures or provide Plaintiffs auxiliary aids or services to allow Plaintiffs to navigate RCI

and read and write independently and privately.  Defendants also refuse to consider Plaintiffs'

blindness when double-celling inmates.

93.     Because of these failures, Plaintiffs have suffered serious harm, including

physical and sexual abuse, extortion, disruption of their relationships with their loved ones, and

severe anxiety and emotional distress.  Plaintiffs also are exposed to a substantial risk of such

harms.

94.     Defendants are aware of the harms and risks created by their policies and

practices.

95.     Plaintiffs have been damaged by the conduct of Defendants, and Plaintiffs are

entitled to compensatory damages in the amount of Two Hundred Thousand and no/100 Dollars

($200,000.00).

96.     The conduct of Defendants demonstrates reckless disregard for the civil rights of

Plaintiffs, and punitive damages in the amount of Two Hundred Thousand and no/100 Dollars

($200,000.00) should be awarded to Plaintiffs as a punishment and to deter similar conduct in the

future.

## COUNT III

### (42 U.S.C. § 12131–12165, 12202–12213 – DISCRIMINATION AGAINST PLAINTIFFS BECAUSE OF BLINDNESS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

### (DEFENDANTS DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES AND MOYER)

Plaintiffs adopt and incorporate the preceding paragraphs as they appear above and say

further:

97.     Congress enacted the ADA "to provide a clear and comprehensive national

mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. §

12101(b)(l).  Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

98.     Public entities may not "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from [an] aid, benefit, or service" they provide, nor may they afford such individuals "an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others."   28 C.F.R. § 35.130(b)(1)(i)–(ii).   ADA regulations prohibit public entities from providing a qualified individual with a disability "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain a result or benefit and from "limit[ing] a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."  *Id.* § 35.130(b)(1)(iii), (vii).

99.     Public entities must "ensure that communications with . . . participants . . . with disabilities are as effective as communications with others." *Id.* § 35.160(a)(1).

100.    ADA regulations prohibit a public entity from using "eligibility criteria that screen out or tend to screen out an individual with a disability . . . from fully and equally enjoying any service, program, or activity" unless the entity can make a showing of necessity. *Id.* § 35.130(b)(1).  Any safety requirements must be "based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities."  *Id.* § 35.130(h).

101.    The "criteria or methods of administration" of a public entity may not "have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" or "have the purpose or effect of defeating or substantially impairing accomplishment

22

of the objectives of the public entity's program with respect to individuals with disabilities." *Id.* § 35.130(b)(3).

102.    Public entities are required to "make reasonable modifications in policies, practices, or procedures . . . to avoid discrimination on the basis of disability," unless such modifications "would fundamentally alter the nature of the service, program, or activity." *Id.* § 35.130(b)(7).  They must also "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity."  *Id.* § 35.160(b)(1); *see also* 42 U.S.C. §§ 12102(4)(E)(i)(III), 12103(1), 12131(2).  Auxiliary aids and services must "protect the privacy and independence of the individual with a disability."  28 C.F.R. § 35.160(b)(2).  Auxiliary aides and services include "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments" and the "acquisition or modification of equipment or devices."  42 U.S.C. § 12103(1).

103.    Title IV of the ADA prohibits discrimination against individuals for "oppos[ing] any act or practice made unlawful" by the ADA or for participating in any way in an investigation proceeding under the ADA.  42 U.S.C. § 12203(a).  It also makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the ADA.  *Id.* § 12203(b).

104.    Plaintiffs, as blind persons, are individuals with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

105.    Defendants are departments, agencies, or instrumentalities of the State of
Maryland or representatives of the same and are "public entit[ies]" within the meaning of 42
U.S.C. § 12131(1)(B).

106.    The Inmate Handbook and orientation materials, administrative grievance
process, Defendants' facilitation of communication between inmates and the courts, the library,
the work programs, the educational programs, the building facilities, the institutional mail
system, and inmate housing are services, programs, or activities of a public entity under 42
U.S.C. § 12132.

107.    As inmates of RCI, Plaintiffs are qualified to participate in and receive the
benefits of each of these services, programs, or activities.

108.    Defendants deny Plaintiffs equal access to and benefits from services, programs,
and activities because of Plaintiffs' blindness when they house Plaintiffs with lower
classification security levels at RCI and when they refuse to consider the safety concerns of blind
inmates when double-celling prisoners.  They discriminate against Plaintiffs because of their
blindness when they relegate them to jobs that provide lower pay and fewer diminution credits
based on stereotypes about their abilities as blind individuals.  Defendants discriminate against
Plaintiffs because of their blindness when they refuse to provide competent literacy instruction to
blind inmates.  Retaliation by Defendants' employees against inmates who assist Plaintiffs with
the grievance and court processes also constitutes discrimination against Plaintiffs because of
their blindness.

109.    Defendants' administration of inmate housing assignments has the effect of
subjecting Plaintiffs to discrimination on the basis of their blindness and substantially impairing

the objectives of the inmate housing program by subjecting Plaintiffs to exploitation and violence.

110.     Defendants' failure to provide reasonable modifications to the Inmate Handbook and orientation materials, grievance process, process for communicating with courts, library, work programs, educational programs, and institutional mail system, and their failures to provide appropriate auxiliary aids and services to allow Plaintiffs to access these programs and navigate RCI independently have subjected Plaintiffs to discrimination on the basis of their disability. Defendants deny Plaintiffs their right to equally and effectively participate in these services, programs, and activities while maintaining their independence and privacy.  Defendants also have failed to ensure that communications with Plaintiffs through these services, programs, and activities are as effective as communications with sighted inmates.

111.     Defendants have retaliated against Plaintiffs by revoking or restricting their privileges, harassing them, threatening to confiscate their property, and refusing to meet with them because of their participation in this litigation.

112.     As a result of Defendants' discriminatory policies and practices, Plaintiffs have suffered physical and sexual abuse, extortion, the disruption of their relationships with their loved ones, and severe anxiety and emotional distress.  Plaintiffs also have been unable to initiate or complete the grievance or court processes or communicate effectively with their attorneys and have had their grievances and lawsuits dismissed.  They have lost the opportunity to receive diminution credits, wages, and training in jobs with better opportunities for employment outside the prison.  They have lost educational opportunities, including the opportunity to receive their GEDs and become literate in Braille, opportunities that are vital to their future employment. Some Plaintiffs have suffered the reduced freedom and access to programming that comes with

housing in a more restrictive facility than necessary for inmates with their classification security levels. Plaintiffs also have experienced emotional pain and suffering as a result of Defendants' discrimination.

113. Defendants' failures to allow access to their services, benefits, activities, programs, or privileges and provide reasonable modifications and auxiliary aids and services are policies, regular practices, and/or customs of Defendants. These failures are ongoing.

114. Defendants' failure to comply with the ADA has resulted, and will continue to result, in harm to Plaintiffs, as Plaintiffs will continue to be in the custody or under the supervision of Defendants and will continue to attempt participation in the services, programs, and activities described herein, without the equal access mandated by the ADA. The resulting harm will continue unless and until Defendants are ordered by this Court to make modifications to their policies, practices, and procedures pursuant to the ADA.

115. Defendants' discriminatory treatment of Plaintiffs is done intentionally or with deliberate indifference to Plaintiffs' protected rights.

116. Plaintiffs have been damaged by the conduct of Defendants, and Plaintiffs are entitled to compensatory damages in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00).

**COUNT IV**

**(29 U.S.C. § 794 – DISCRIMINATION AGAINST PLAINTIFFS BECAUSE OF BLINDNESS IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT)**

**(DEFENDANTS DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES AND MOYER)**

Plaintiffs adopt and incorporate the preceding paragraphs as they appear above and say further:

117.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

118.     Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, . . . or other instrumentality of a State; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended."  *Id.* § 794(b)(1).   The requirements of Section 504 apply "to each recipient of Federal financial assistance from the Department of Justice."  28 C.F.R. § 42.502.

119.     Federally funded programs and activities may not "[d]eny a qualified handicapped person the opportunity accorded to others to participate" or "achieve the same benefits that others achieve" from the program or activity.  *Id.* § 42.503(b)(1)(i)–(ii).

120.     Recipients of federal funds are required to "insure that communications with their . . . beneficiaries are effectively conveyed to those having impaired vision."  *Id.* § 42.503(e).

121.     The "criteria or methods of administration" of a recipient of federal funds may not "purposefully or in effect discriminate on the basis of handicap" or "defeat or substantially impair accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons."  *Id.* § 42.503(b)(3).

122.     Furthermore, "[a] recipient that employs fifteen or more persons shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory . . . skills where a refusal to make such provision would discriminatorily impair or exclude the persons in the program receiving federal financial assistance."  *Id.* § 42.503(f).  Appropriate auxiliary aids

include, but are not limited to, "brailed and taped materials, . . . readers, . . . [a]ttendants, individually prescribed devices, readers for personal use or study, or other devices of a personal nature." *Id.* § 42.503(f).

123.    A recipient may not "[i]ntimidate or retaliate against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504." *Id.* § 42.503(b)(1)(vii).

124.    Defendants receive federal grants, thereby subjecting them to the requirements of Section 504.  Defendants employ more than fifteen people.

125.    RCI and, among other things, its Inmate Handbook and orientation materials, administrative grievance process, facilitation of communication between inmates and the courts, library, work programs, educational programs, building facilities, institutional mail system, and inmate housing are services, programs, or activities of Defendants.

126.    Plaintiffs, as blind persons, are individuals with a disability within the meaning of Section 504.

127.    As inmates of RCI, Plaintiffs are eligible to participate in and receive the benefits of each of these services, programs, or activities. *Id.* § 42.540(*l*)(2).

128.    Defendants deny Plaintiffs equal access to and benefits from services, programs, and activities because of Plaintiffs' blindness when they house Plaintiffs with lower classification security levels at RCI and when they refuse to consider the safety concerns of blind inmates when double-celling prisoners.  They discriminate against Plaintiffs because of their blindness when they relegates them to jobs that provide lower pay and fewer diminution credits based on stereotypes about their abilities as blind individuals.  Defendants discriminate against Plaintiffs because of their blindness when they refuse to provide competent literacy instruction to

blind inmates.  Retaliation by Defendants' employees against inmates who assist Plaintiffs with the grievance or court processes also constitutes discrimination against Plaintiffs because of their blindness.

129.    Defendants' administration of inmate housing assignments has the effect of subjecting Plaintiffs to discrimination on the basis of their blindness and substantially impairing the objectives of the inmate housing program by subjecting Plaintiffs to exploitation and violence.

130.    Defendants' failures to provide reasonable modifications to the Inmate Handbook and orientation materials, grievance process, process for communicating with courts, library, work programs, educational programs, and institutional mail system, and their failures to provide appropriate auxiliary aids and services to allow Plaintiffs to access these programs and navigate RCI independently have subjected Plaintiffs to discrimination on the basis of their disability. Defendants deny Plaintiffs their right to equally and effectively participate in these services, programs, and activities while maintaining their independence and privacy.  Defendants also have failed to ensure that communications with Plaintiffs through these services, programs, and activities are as effective as communications with sighted inmates.

131.    Defendants have retaliated against Plaintiffs by revoking or restricting their privileges, harassing them, threatening to confiscate their property, and refusing to meet with them because of their participation in this litigation.

132.    As a result of Defendants' discriminatory policies and practices, Plaintiffs have suffered physical and sexual abuse, extortion, the disruption of their relationships with their loved ones, and severe anxiety and emotional distress.  Plaintiffs also have been unable to initiate or complete the grievance or court processes or communicate effectively with their attorneys and

have had their grievances and lawsuits dismissed.  They have lost the opportunity to receive diminution credits, wages, and training in jobs with better opportunities for employment outside the prison.  They have lost educational opportunities, including the opportunity to receive their GEDs and become literate in Braille, opportunities that are vital to their future employment. Some Plaintiffs have suffered the reduced freedom and access to programming that comes with housing in a more restrictive facility than necessary for people with their classification security levels.  Plaintiffs also have experienced emotional pain and suffering as a result of Defendants' discrimination.

133.    Defendants' failures to provide equal access to their services, benefits, activities, programs, or privileges, and provide reasonable modifications and auxiliary aids and services, are policies, regular practices, and/or customs of Defendant.  These failures are ongoing.

134.    Defendants' failure to comply with Section 504 has resulted, and will continue to result, in harm to Plaintiffs, as Plaintiffs will continue to be in the custody or under the supervision of Defendants, and will continue to attempt to participate in the services, programs, and activities described herein, without the equal access mandated by Section 504. The resulting harm will continue unless and until Defendants are ordered by this Court to make modifications to their policies, practices, and procedures pursuant to Section 504.

135.    Defendants' discriminatory treatment of Plaintiffs is done intentionally or with deliberate indifference to their protected rights.

136.    Plaintiffs have been damaged by the conduct of Defendants, and Plaintiffs are entitled to compensatory damages in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00).

**WHEREFORE**, PLAINTIFFS respectfully request this Honorable Court to grant the following relief:

A.   Enjoin Defendants from denying Plaintiffs equal and effective access to the Inmate Handbook and RCI orientation materials, grievance process, courts, library, work programs, educational programs, building facilities, institutional mail system, and to safe housing;

B.   Enjoin Defendants from denying Plaintiffs the ability to read, write, conduct legal research, and navigate RCI without relying on sighted inmates;

C.   Enjoin Defendants from double-celling Plaintiffs with sighted inmates without an option for single-celling;

D.   Enjoin Defendants from retaliating against Plaintiffs for engaging in protected activity under the Americans with Disabilities Act and/or Rehabilitation Act;

E.   Enjoin Defendants to award Plaintiffs diminution credits towards their release in an amount commensurate with Plaintiffs' lost opportunities to earn such credits through work, educational, or training programs as a result of Defendants' discriminatory actions;

F.   Enjoin Defendants from housing inmates with lower classification security levels at RCI without an option for being housed at facilities commensurate with their classification security levels;

G.   Award compensatory damages in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00) in favor of Plaintiffs and against Defendants;

H.   Award punitive damages in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00) in favor of Plaintiffs and against Defendants;

I.   Award Plaintiffs their costs and attorneys' fees in this action; and

J.   Grant any and all additional relief Plaintiffs' causes require.

Respectfully submitted,


_____/s/_____
Stephen Z. Meehan
Federal Bar No. 23915


_____/s/_____
Damien Dorsey
Federal Bar No. 19194


Prisoner Rights Information System
  of Maryland, Inc.
P.O. Box 929
Chestertown, Maryland  21620
(410) 778-1700 (phone)
(410) 778-3543 (fax)
smeehan@prisminc.org
ddorsey@prisminc.org


_____/s/_____
Daniel F. Goldstein
Federal Bar No. 01036


_____/s/_____
Joshua R. Treem
Federal Bar No. 00037


Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland  21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
dfg@browngold.com
jtreem@browngold.com

*Attorneys for Plaintiffs*


Date: September 7, 2016

## JURY  TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs, by their counsel, hereby demand a trial by jury on all claims so triable in this action.

_____/s/_____

Stephen Z. Meehan
Federal Bar No. 23915


_____/s/_____

Damien Dorsey
Federal Bar No. 19194


_____/s/_____

Daniel F. Goldstein
Federal Bar No. 01036


_____/s/_____

Joshua R. Treem
Federal Bar No. 00037