# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STEVEN BROWN et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | CIVIL ACTION NO. RDB-16-945 |
| DEPARTMENT OF PUBLIC | * | |
| SAFETY AND CORRECTIONAL | * | |
| SERVICES et al., | * | |
| | * | |
| Defendants. | * | |

      \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORIES**
**AND PRODUCTION OF DOCUMENTS**

Plaintiffs Steven Brown, Wilbert Delano, Gregory Hammond, Sedric Holley, Russell Hopkins, Johnny James, Tyrell Polley, Maynard Snead, and Robert Wilson (collectively, "Plaintiffs"), by and through their undersigned counsel, move this Court to compel Defendant Department of Public Safety and Correctional Services ("DPSCS," or "Defendant") to answer Plaintiffs' Interrogatories and produce documents in response to Plaintiffs' Requests for Production propounded on October 1, 11, and 19, 2018.  By agreement of the parties, Defendant served Answers and Responses to Plaintiffs' discovery requests on November 13, 2018.  However, Defendant has refused to substantively answer most of Plaintiffs' Interrogatories.  The Answers it gives are in nearly every case incomplete and limited only to reference to documents that have yet to be produced.  Defendant has produced no documents beyond the Plaintiffs' base files, access to which Plaintiffs are entitled outside of the discovery process, DCD #20-12.[1]

---

[1] Available at http://itcd.dpscs.state.md.us/PIA/ShowFile.aspx?fileID=82.

After holding Plaintiffs' base files for approximately two weeks, Defendant produced the base files with every page marked as "Confidential-Attorneys Eyes Only" in contravention of the parties Confidentiality Agreement.  Defendant's attorneys on November 8 agreed to make more precise designations of which, if any, pages of the base files are properly designated Confidential or Confidential-Attorneys' Eyes Only, but have yet to do so, thus limiting Plaintiffs' ability to use the base files in discovery.

Plaintiffs requested to meet and confer with Defendant's attorneys about their concerns with Defendant's discovery responses on November 18.  Ex. 1.  Defendant's counsel responded that they were not available to meet and confer until November 28.  *Id.*  Defendant's counsel did not respond to Plaintiffs' requests to meet earlier.  *Id.*

The Parties conferred by telephone on November 28 and 29, 2018.  At that time, counsel for Defendant stated its intention to begin producing documents to Plaintiffs by the end of the week of December 3 or the beginning of the week of December 10, two months after Plaintiffs served their discovery requests.  This schedule, which does not guarantee any date by which Plaintiffs will receive the majority of responsive documents, leaves Plaintiffs little time to prepare for and conduct depositions before the close of discovery on January 24, 2019, ECF No. 65.  To avoid further prejudice, Plaintiffs respectfully request this Court to compel Defendant to answer discovery fully and within a timeframe sufficient to allow Plaintiffs to review the responses and conduct further discovery as needed.

## LEGAL STANDARD

Under the Federal Rules,

[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Parties may serve interrogatories and requests for production on any matter within the scope of Rule 26.  Fed. R. Civ. P. 33(a)(2), 34(a).  When in answer to an interrogatory, a party chooses to produce business records, it must answer by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d)(1).  When in response to a request for production, a party chooses to produce copies of documents, the response must specify a reasonable time for production.  Fed. R. Civ. P. 34(b)(2)(B).

## ARGUMENT

Other than the Plaintiffs' testimony, nearly all the evidence in this case is in Defendant's possession.  DPSCS has access to systemic information about the prison system and its treatment of blind inmates that Plaintiffs cannot otherwise get.  DPSCS also maintains written documentation of requests, complaints, grievances, emails, and other key evidence, both from and about Plaintiffs and from and about other blind inmates, in its records.  With regard to records that Plaintiffs theoretically could possess, DPSCS limits what inmates can keep in their cells and provides blind inmates with no way to privately access their papers, creating a disincentive to keeping such materials lying around.  In light of this imbalance of access to information, it is particularly egregious for Defendant to refuse to respond to Plaintiffs' discovery requests.

Instead of responding properly, Defendant has asserted a barrage of inappropriate objections and so limited its responses as to be nearly useless.  Due to the volume of requests to which Defendant has failed to satisfactorily respond, Plaintiffs have attached the discovery

relevant requests and responses as Exhibits to this Motion and will refer the Court to the relevant discovery requests in each Part below.

I.      **Limitation of Responses to the Plaintiffs: Ex. 2, Ans. James Interrog. Nos. 7–12, 14; Ex. 3, Ans. Holley Interrog. Nos. 3, 5–14; Ex. 4, Ans. Delano Interrog. Nos. 9, 10, 14; Ex. 5, Ans. Wilson Interrog. Nos. 6–14; Ex. 6, Ans. Brown Interrog. No. 17; Ex. 7, Ans. Snead Interrog. Nos. 3, 5–11, 18, 22; Ex. 14, Ans. Hammond RFP Nos. 2–5, 20; Ex. 15, Ans. Hopkins RFP Nos. 1, 4, 6, 8, 11, 16–17, 19–20; Ex. 11, Ans. James RFP Nos. 1, 4–19; Ex. 12, Ans. Brown RFP Nos. 6, 10–11, 13–17; Ex. 13, Ans. Snead RFP Nos. 1, 6–12, 16, 20.**

In response to Interrogatories and Requests for Production seeking DPSCS policies and procedures and those seeking information about all Plaintiffs, and in some cases, other blind inmates, DPSCS has generally refused to produce information about Plaintiffs or blind inmates other than the individual Plaintiff propounding the Interrogatory or Request for Production. It has also refused to produce information about institutions other than those in which the propounding Plaintiff was housed, or programs in which that Plaintiff participated.[2]  During the Parties' conference on November 28, Defendant agreed to produce information in response to each discovery request that relates to the any Plaintiff.  Defendant still refuses to produce information concerning other blind inmates or DPSCS institutions other than those in which Plaintiffs have been housed.

There is no principle that limits discovery requests to information concerning only the Plaintiff directly.  Even if such a principle existed, here Plaintiffs have alleged systemic violations.  The treatment or experience of any blind person in DPSCS custody is relevant to the claims of all Plaintiffs.  *Cf., e.g.*, *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88

---

[2] At times DPSCS misidentifies the institutions in which a Plaintiff was housed.  For example, its Answers indicate that it believes that Plaintiff Russell Wilson was not housed at Roxbury Correctional Institution ("RCI") within the limitations period, Ex. 5, Ans. Wilson Interrog. Nos. 6–9, 11–14, and that Mr. Delano was not housed at the Patuxent Institution, Ex. 4, Ans. Delano Interrog. No. 4.  That is incorrect.  Ex. 19.

(2008) (holding that evidence of discrimination against nonparties is neither *per se* relevant or
irrelevant under Federal Rule of Civil Procedure 401 and depends on "how closely related the
evidence is to the plaintiff's circumstances and theory of the case"); *Pederson v. Preston*, 250
F.R.D. 61, 66 (D.D.C. 2008) (granting motion to compel identification of discrimination
complaints filed by persons other than the plaintiff, because the information "could help establish
patterns and practices of discrimination within the company").  For example, if the evidence
shows that DPSCS denied one blind person's request to work in the kitchen at RCI because of
his blindness, that is relevant evidence that all Plaintiffs were prohibited from working in the
kitchen because of their blindness.  If the evidence shows that no blind people have successfully
completed or participated in certain programs, *see* Ex. 15, Ans. Hopkins RFP No. 19, that is
evidence that those programs are closed to the blind.

DPSCS frequently makes burdensomeness objections in response to the requests for
information about other blind inmates because, it claims, Administrative Remedy Procedure
complaints ("ARPs") are not maintained electronically, are voluminous, and are difficult to
search.  An example of DPSCS' burdensomeness objection is:

> Moreover, the cost in personnel time and money to investigate and provide
> responses to the requesting Plaintiff as to all other inmates' experiences would be
> greatly disproportionate to the discovery requirements in this case. To the extent
> that the request calls for information about ARPs, there are thousands of these filed
> each year, and they cannot be searched electronically. The cost of DPSCS staff time
> to mine the thousands of ARPs during the relevant time period, at most, from March
> 30, 2013 to the present far exceed and is disproportional to the requirements of
> Plaintiff's claims in this case.

Ex. 2, Ans. James Interrog. No. 7.  DPSCS mischaracterizes Plaintiffs' requests as requiring
searches of all inmates' ARPs and other communications.  However, Plaintiffs' requests where
these burdensomeness objections are made are limited to blind inmates.  The volume of ARPs

filed by all inmates is, therefore, not relevant.  There are, and have been at all relevant times, a limited number of blind people in DPSCS custody.  DPSCS has not argued that it is burdensome to search the complaints and grievances filed by this small subset of inmates, even if they are only stored in paper form.  Moreover, DPSCS maintains ARP indexes, on information and belief in an electronic format, that state the subject matter of every ARP filed by an inmate.  Using the indexes would significantly cut down on the burden of a search.  In any case, DPSCS has chosen to store documents that it requires as part of its administrative process in paper form and has continued to do so for nearly three years since Plaintiffs' Complaint was filed, even in light of its obligation to preserve records relevant to the case.  DPSCS should not be permitted to use the inefficiencies of its own filing system to avoid its duty to preserve and produce discovery.

Moreover, the burdensomeness of producing documents that cannot be electronically searched does not relieve DPSCS of the obligation to produce responsive documents, or respond with information, about which it has knowledge or which can be easily searched.  Disciplinary records, records about jobs (such as for walkers and tutors, *see* Ex. 4, Ans. Delano Interrog. No 14), and administrative law judges' decisions, for example, are electronically available and may contain some of the information requested or allow DPSCS to narrow its search of paper documents.  DPSCS also has other ways of gathering the information requested, for example, by querying the staff members at its institution who would be responsible for processing the relevant documents or administering the relevant programs.

Even it if were burdensome to search the Plaintiffs' records and the records of other blind inmates, the importance of this information to the case at hand justifies the burden.  ARPs are vital evidence of discriminatory incidents experienced by blind inmates and of DPSCS's

knowledge of its discriminatory practices and their illegal nature.  They may also identify

important witnesses.

DPSCS also refuses to answer Interrogatories about facilities other than those at which an

individual propounding Plaintiff has been housed, *see, e.g.*, Ex. 3, Ans. Holley Interrog. No. 5, or

in housing blocks other than those in which that Plaintiff has been housed, *see* Ex. 15, Ans.

Hopkins RFP No. 4.  However, Plaintiffs allege that they have been harmed by being kept at RCI

and ECI,[3] as opposed to other institutions that they would be eligible for, but for their blindness.

Am. Compl. ¶¶ 73–76, ECF. No. 20.  They have also been harmed by being confined to

particular housing blocks.  *E.g.*, Ex. 16, Brown Ans. Interrog. No. 5.  The programs available at

those other facilities, the benefits of which are not available to Plaintiffs, are relevant to the

harms Plaintiffs have suffered.  The policies at those facilities are relevant to what is reasonable

for DPSCS to allow with regard to blind prisoners.

DPSCS refuses to produce information about the security classification, housing, and cell

assignments of all blind inmates, Ex. 15, Ans. Hopkins RFP Nos. 6, 8, 11; Ex. 7, Ans. Snead

Interrog. No. 5.  Plaintiffs allege, with support in the record, that DPSCS has a policy or practice

of housing all blind people at RCI and ECI, regardless of their security classification.  *See*

Ex. 18.  Plaintiffs also allege that DPSCS does not allow blind inmates to live in certain housing

blocks, for example, on the honor tier at RCI, or does not make reasonable accommodations to

allow them to live there.  *E.g.*, Ex. 16, Brown Ans. Interrog. No. 5.  Such action violates Title II

of the ADA.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).  Information about how

---

[3] During the pendency of this suit, Plaintiff Robert Wilson was transferred to several institutions, including Eastern Correctional Institute ("ECI").  Ex. 19.

blind inmates are classified and assigned to housing units and cells is, therefore, vital to proving those claims.

To the extent private medical information is included in responsive information or documents, as DPSCS claims, *see, e.g.*, Ex. 2, Ans. James Interrog. No. 9; Ex. 3, Ans. Holley Interrog. Nos. 7–8, DPSCS may make appropriate redactions and/or subject its Answers to the parties' Stipulated Protective Order, ECF No. 70.  Other blind inmates, the inmates DPSCS assigns to assist them, and their cellmates may be critical witnesses in this case (or, in the case of cellmates and inmate assistance, may have perpetrated harmful acts against the Plaintiffs).  Their identity cannot be entirely withheld.

The Court should compel DPSCS to answer discovery requests completely, with regard to every person about which information is sought.

**II.     Objection to Producing Documents Regarding Disabilities Other Than Blindness: Ex. 6, Ans. Brown Interrog. Nos. 11, 13, 19; Ex. 14, Ans. Hammond RFP Nos. 22– 23; Ex. 15, Ans. Hopkins RFP Nos. 2, 10; Ex. 11, James RFP Nos. 1, 4; Ex. 12, Ans. Brown RFP Nos. 7–9, 12; Ex. 13, Ans. Snead RFP Nos. 1, 3–5, 11.**

This case challenges systemic discrimination against, and refusal to provide reasonable accommodations to, blind prisoners.  Plaintiffs understand that individuals with other disabilities are accommodated by DPSCS.  Yet, DPSCS refuses to produce information and documents related to its policies, practices, and procedures with respect to the treatment of prisoners with disabilities other than blindness.  Nondiscrimination and accommodation policies, practices, and procedures specific to disabilities other than blindness are relevant to determining what is reasonable regarding blind inmates.  For example, if DPSCS provides professional sign language interpretation for deaf inmates, that is relevant to whether it is reasonable for it to provide professional assistance with communication (reading and writing) for blind inmates.  Similarly, if the eligibility requirements for different security classifications, cell assignments, or job

assignments are different with respect to different disabilities, that is relevant evidence of

discrimination.  Moreover, DPSCS's knowledge of its obligations regarding disabilities other

than blindness is relevant to its intent in failing to meet those obligations toward blind inmates.

The information should therefore be produced.

### III.    Limitation of Production of Documents and Answers to Interrogatories to March 30, 2013: Ex. 3, Ans. Holley Interrog. No. 3; Ex. 12, Ans. Brown RFP No. 13–14.

Defendant has improperly limited the scope of production to March 30, 2013, and after.

Plaintiffs filed their Complaint on March 30, 2016.  ECF No. 1.[4]  During the Parties' conference

on November 28, Defendant agreed to produce Plaintiffs' medical records and ARP indexes,

documents relating to a 2011 Inmate Grievance Office Hearing relating to one Plaintiff's

requests for accommodations, as well as policies and procedures adopted prior to 2013 but in

effect since 2013.  However, Defendant declines to provide any information about actions taken,

accommodation requests made, or responses thereto before March 30, 2013.  Plaintiffs' claims

under Title II of the Americans with Disabilities Act ("Title II," or "ADA"), 42 U.S.C. § 12131–

12165, 12202–12213, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794,

and 42 U.S.C. § 1983 are governed by a three-year statute of limitations.  *Semenova v. Maryland*

*Transit Admin.*, 845 F.3d 564, 567–68 (4th Cir. 2017) (Title II and Section 504); *see Wallace v.*

*Kato*, 549 U.S. 384, 387 (2007) (statute of limitations under Section 1983 "is that which the State

provides for personal-injury torts").  While the statute of limitations limits Plaintiffs' damages, it

does not govern the scope of discovery.

Plaintiffs have reasonably limited the vast majority of their discovery requests to January

1, 2013.  *E.g.*, Ex. 17, Pls.' Instructions for Discovery Requests.  In the few requests seeking

---

[4] While this *pro se* filing was styled a Motion for Appointment of Counsel, the Court treated it as a Complaint.  ECF. No. 2.

information and documents before 2013, the information sought is relevant and proportional to

the issues in the case.  Several Plaintiffs have been or were in DPSCS custody since well before

2013.  Actions before 2013 are evidence of DPSCS's policies, practices, and intent within the

limitations period and explain Plaintiffs' actions within the limitations period.  Requests for

information outside the limitations period are relevant to, among other things:

- Whether accommodations are, or were, available during the period within limitations.  If
  DPSCS denied a blind inmate's request before 2013, that is probative as to whether that
  accommodation was available in 2013 and thereafter.  Moreover, if plaintiffs requested
  an accommodation before 2013, they may not have requested it again in the limitations
  period after the first denial, due to futility.

- Whether DPSCS, in practice, discriminated against plaintiffs.  A clear expression of such
  practice may be before the limitations period, while the practice remained in effect during
  and after 2013.  *See*, *e.g.*, Ex. 18.

- DPSCS's knowledge that Plaintiffs required accommodations or that it was violating
  their rights.  DPSCS's knowledge is central to Plaintiffs' damages claims. DPSCS could
  have come to that knowledge before 2013.

The requests for information from before March 30, 2013, are limited and targeted at

matters at the heart of the case.  The Court should therefore compel DPSCS to fully respond.

## IV.    Exs. 3–6, 8–11: Ans. James, Holley, Delano, Wilson, Snead, Polley, Hammond, Hopkins Interrog. Nos. 2; Ex. 6, Ans. Brown Interrog. No. 21.

These Interrogatories request information about Plaintiffs' requests for accommodations

and complaints and grievances about such requests.  While DPSCS agrees to produce documents

in response to this request, it does not identify any oral requests, nor does it state that there were

none.  During the Parties' November 28 conference, counsel for Defendant at first stated that all

oral requests would be reflected in documents, then admitted that they did not know whether

requests made to employees other than case managers would be reflected in documents.  When

Plaintiffs pressed counsel on whether DPSCS planned to make inquiries of its employees as to

oral requests for accommodations, counsel stated only that DPSCS would "conduct a reasonable

investigation." Plaintiffs are willing to work with DPSCS to identify particular persons who should be queried regarding whether oral requests or complaints were made. DPSCS should be compelled to fully answer these Interrogatories.

## CONCLUSION

The deficiencies discussed in this Motion are in addition to the dozens of other frivolous and rote objections that populate DPSCS's responses. DPSCS's approach to discovery would be inappropriate in any case and is particularly unacceptable on the current discovery schedule in a case where Defendants possess and control the vast majority of the information regarding the claims at issue. Plaintiffs urge the Court to grant their Motion and compel full responses to Plaintiffs' discovery requests within a short timeline and to award Plaintiffs their reasonable attorneys' fees and costs for making this motion.


Respectfully submitted,


Date: November 28, 2018                   _____/s/_____
                                          Stephen Z. Meehan (Federal Bar No. 23915)
                                          Damien Dorsey (Federal Bar No. 19194)
                                          Prisoner Rights Information System of MD, Inc.
                                          P.O. Box 929
                                          Chestertown, Maryland  21620
                                          Telephone: 410-528-1400
                                          Telecopier: 410-528-1550
                                          Electronic Mail: smeehan@prisminc.org



                                          _____/s/_____
                                          Eve L. Hill (Federal Bar No. 19938)
                                          Abigail Graber (Federal Bar No. 19727)
                                          Brown, Goldstein & Levy, LLP
                                          120 E. Baltimore Street, Suite 1700
                                          Baltimore, Maryland  21202
                                          (410) 962-1030 (phone)

(410) 385-0869 (fax)
ehill@browngold.com
agraber@browngold.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of November, 2018, a copy of Plaintiffs' Motion to

Compel were served upon Counsel for Defendants by Electronic Mail to:

TERESA M. KELLY
Assistant Attorney General
St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-7962/Fax (410) 576-6880
E-mail: tkelly@oag.state.md.us

_____/s/_____
Abigail Graber