# EXHIBIT A-1

| | |
|---|---|
| **From:** | Eve Hill |
| **To:** | Kelly, Teresa; Stephen Meehan (SMeehan@prisminc.org); "(DDorsey@prisminc.org)"; Abigail A. Graber; James T. Fetter |
| **Cc:** | Lane-Weber, Stephanie |
| **Subject:** | Re: Blind Inmate Litigation - Discovery |
| **Date:** | Monday, November 19, 2018 9:56:08 PM |

I'm afraid waiting an additional 1.5 weeks to meet about these issues will not work.  If we cannot meet this week, I think we will need to file with the court.  Please confirm that you have no availability Tuesday or Wednesday.  We're happy to meet and confer about any issues you have with our responses, but please describe your concerns.  In addition, you have not yet produced documents. Please tell us when that production will occur, as well as when you will correct your designation of all the base files as being Confidential-Attorneys Eyes Only.

Eve

---

**From:** Kelly, Teresa <tkelly@oag.state.md.us>
**Sent:** Monday, November 19, 2018 1:58 PM
**To:** Stephen Meehan (SMeehan@prisminc.org); '(DDorsey@prisminc.org)'; Eve Hill; Abigail A. Graber; James T. Fetter
**Cc:** Lane-Weber, Stephanie
**Subject:** RE: Blind Inmate Litigation - Discovery

Hello,

I am writing regarding Plaintiffs' email request to meet and confer about DPSCS's discovery responses to date (we note that the email request characterizes the challenged responses as counsels' responses, but they are, and should be referred to as, responses by our client).

Due to previously scheduled and pressing matters, including those in this case, Stephanie and I are not available today.  Plaintiffs' request appears to indicate a lengthy conversation.  Presently we can set aside November 28, 2018 at 10 am to discuss discovery concerns.  At that time, if there is time, we may also want to address deficiencies in Plaintiffs' Answers to Interrogatories.

We look forward to discussing discovery issues with you.

Thank you,

Terri

**Teresa M. Kelly**

Assistant Attorney General, Correctional Litigation Division

Office of the Attorney General

200 St. Paul Place

Baltimore, Maryland 21202

(t)  410-576-7962

(f)  410-576-6880

This message (including any attachments) is intended only for the use of the individual or entity to which it is addressed and may contain information that is non-public, proprietary, privileged, confidential, and exempt from disclosure under applicable law or may constitute as attorney work product.  If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, notify us immediately by telephone and (i) destroy this message if a facsimile or (ii) delete this message immediately if this is an electronic communication.  Thank you.

| | |
|---|---|
| **From:** | Eve Hill |
| **To:** | Lane-Weber, Stephanie; Kelly, Teresa |
| **Cc:** | Stephen Meehan (SMeehan@prisminc.org); Abigail A. Graber; Damien Dorsey (DDorsey@prisminc.org) (DDorsey@prisminc.org); James T. Fetter; Sharon Krevor-Weisbaum |
| **Subject:** | Brown et al. v. DPSCS et al. - Meet and Confer re. Discovery Responses |
| **Date:** | Sunday, November 18, 2018 5:51:08 PM |

Dear Terri and Stephanie

Please give us your availability to meet and confer Monday regarding DPSCS's interrogatory and production responses. We have a number of serious concerns that need to be worked out or taken to the judge immediately.

First, while we are not objecting to the timeliness of your responses, your general objection E to the interrogatories and objection 10 to the document requests are simply incorrect. As Federal Rule of Civil Procedure 6 makes clear, midnight is the end of a day, so an email (to which you agreed for service of discovery requests) sent at 6:15 p.m. or 11:09 p.m. is considered served on the day the email was sent. So you will need to treat service of our interrogatory and document requests as having been accomplished on the dates the emails were sent.

Many of your answers respond by stating "Defendant will answer" or "will produce" but then do not answer or produce or identify. The deadline for answering has passed and these responses purported to be your answers. The deadline was not simply to tell us what interrogatories/document requests you object to and what requests you plan to answer in the future. When do you intend to produce documents? You should have produced documents at least by the time of your response to our requests for production, indicating which documents are responsive to the interrogatories and document requests.

Broadly speaking, many of our concerns about your interrogatory and production responses fall into these categories:

1. Limitation of production of documents and responses to interrogatories to March 30, 2013, to the present. We agree that our clients' damages are limited to that period of time, and we limited the generally applicable period for the interrogatories to January 1, 2013. However, that does not mean that documents going back farther are irrelevant. In the few requests seeking information and documents before 2013 that information is still relevant to many of the issues in this case, including whether accommodations are, or were, available during the period within limitations (if DPSCS denied a request before 2013, that is probative as to whether that accommodation was available in 2013 and thereafter, and if plaintiffs requested an accommodation before 2013, they may not have requested again in the limitations period after the first denial, due to futility); whether DPSCS had a policy of discriminating against plaintiffs (the clearest evidence of

exercise of the policy may come in a time before the limitations period, while the policy remained in effect after 2013); and DPSCS's knowledge that Plaintiffs required accommodations or that it was violating their rights under the ADA/Rehab Act (it could have come to that knowledge before 2013, and information from before 2013 – for example, as relates to Mr. Holley's IGO proceeding – is relevant).

2. You generally refuse to produce information about plaintiffs other than the plaintiff propounding the interrogatory/production request, or about institutions other than those in which that plaintiff was housed, or programs in which that plaintiff participated. (At times you misidentify the institutions in which a plaintiff was housed, for example, with regard to your apparent belief that Mr. Wilson was not housed at RCI in the limitations period.) We are not aware of any authority that says, in a multi-plaintiff case, each plaintiff is limited only to interrogatories about himself. Even if such a principle existed, in this case, in which the plaintiffs have alleged systemic violations, the treatment or experience of any blind person is relevant to the claims of all other blind people. To your refusal to answer questions about the programs available at other facilities, Plaintiffs have alleged that they have been harmed by being kept at RCI, as opposed to other institutions that they would be eligible for, but for their blindness. The programs available at those facilities, the benefits of which are not available to plaintiffs, are relevant to the harms Plaintiffs have suffered. In addition, your approach is a waste of time and will only make discovery more burdensome on all of us.  Much as we have accepted your single requests to all Plaintiffs, rather than requiring separate requests to each plaintiff, please respond to the interrogatories as they were asked – when an interrogatory requests information regarding the experiences of all plaintiffs, please respond regarding all plaintiffs.

3. You generally refuse to answer interrogatories or production requests seeking information on treatment of blind inmates other than Plaintiffs, arguing that doing so would violate medical privacy rights of other inmates, because actions toward other blind inmates are irrelevant to plaintiffs' claims, and because you believe it would be burdensome to collect such information because DPSCS chooses to maintain a paper records system.  These requests are not objectionable on the bases you identify.  We do not seek medical information about other blind inmates if that information is protected (although the fact that DPSCS requires blind inmates to reveal their ARPs and other requests to sighted inmates indicates that such information is not treated as confidential by DPSCS). To the extent HIPAA-protected information is included, you may redact it and/or subject it to our Confidentiality Agreement.  Nor did we request such information about all inmates or even all inmates with disabilities – just blind inmates, of which there are very few and all of whom should be identified in DPSCS' own documentation and, indeed, virtually all of whom are presumably housed together. Moreover, contrary to your assertions of burden, DPSCS has a set system and

designated personnel for handling these procedures and leadership personnel to make decisions.  This is a limited universe. Finally, such complaints (including those prior to 2013) are relevant to Plaintiffs' claims, particularly as those claims allege that DPSCS' actions and inactions were intentional, deliberately indifferent, knowing, and with reckless disregard of consequences.

4. You object to producing documents regarding DPSCS' policies, practices, and procedures regarding disabilities other than blindness.  This case challenges systemic disability-based discrimination by DPSCS.  DPSCS' policies, practices, and procedures regarding disability nondiscrimination and accommodations are relevant to Plaintiffs' case, both because blindness is covered under any general disability policies, practices or procedures and because nondiscrimination and accommodation policies, practices, and procedures regarding disabilities other than blindness are nonetheless relevant to determining what is reasonable regarding blind inmates.

5. With regard to the interrogatories asking for information about each plaintiff's requests for accommodation, and complaints or grievances about such requests (mostly ROG 2, and Steven Brown ROG 21),

    a. You agree to provide "informal" complaints, although the interrogatory requests both formal and informal requests, complaints and grievances;
    b. you do not identify any oral requests, nor do you state that there were none.

6. You decline to produce any requests or follow up involving Third Party Entities, claiming such information would be in the control of the Third Party Entity.  The interrogatories and requests defined the term "Third Party Entity" to include only those entities with which DPSCS contracts or otherwise arranges to provide programs, activities, aid, services, and/or benefits to people at DPSCS.  As such, these entities are DPSCS' agents and DPSCS has possession, custody or control of (including both the legal right and practical ability to obtain) information and documents they possess regarding their activities at or on behalf of DPSCS.  You must identify the information and produce the documents held by Third Party Entities, as defined, regarding Plaintiffs' requests, complaints, and grievances about accommodations, as well as identifying the Third Party Entities holding such information and documents.

7. There are a number of interrogatories asking for information about the format in which documents are available (and were available throughout the limitations period). See, e.g., James ROGs 3–5. Your answers citing to documents to be produced does not answer the format in which documents were available.

8. You frequently refuse to produce documents that "Plaintiff's counsel may access at no

fee from the internet." To the extent you are withholding documents pursuant to that limitation, please identify those documents, including their internet location.

9. Many of your answers to interrogatories answer by "referring" to relevant documents, without identifying those documents. In some responses (e.g., Hammond ROG 2) you agree to produce responsive documents. In others (e.g., James ROGs 2-6, 7, 8, 9, 10,11, 12, 13, 15, 16) you agree only to "respond by referral to relevant responsive documents," but you sometimes (e.g., James ROG 9) refer only to general categories of documents without "identifying" them as required and other times you do not identify any documents (e.g., James ROGs 2, 13, 15; Holley ROG 5). It is unclear what these responses mean – will you be producing responsive documents as your answers to interrogatories? In other responses (e.g., James Rogs 3-6, 7, 8, 10, 11, 12, 16), you state that relevant documents "include" a list. Please confirm that these are all the currently known responsive documents in the possession, custody or control of DPSCS and that they will be produced and when.

These general concerns are in addition to issues with specific interrogatories that you have refused to answer, or for which you have provided answers that appear deficient. Among these specific failures are:

1. James ROG 7: James ROG 7 is not limited to blind inmates, but includes outside individuals and entities, DPSCS staff and contractors, and others who have filed complaints about treatment of blind inmates.
2. James ROG 9: You respond to our request for information about job removals and reassignments of blind inmates, by objecting that information about other blind inmates is irrelevant. To the contrary, Plaintiffs allege that DPSCS has discriminatory policies regarding assignment of jobs to blind inmates, not just discriminatory individual treatment of themselves. Thus treatment of all plaintiffs, as well as other blind inmates, is relevant to Mr. James' claims. To the extent information protected by HIPAA is included in the relevant information or documents, you may redact it and/or subject it to our agreed Confidentiality Agreement.
3. James ROG 11: The last 2 lines of James ROG 11 do not appear to be correct or responsive to the interrogatory.
4. Holley ROG 4: This IGO and DPSCS' response are relevant to Plaintiffs' claims, particularly as those claims allege that DPSCS' actions and inactions were intentional, deliberately indifferent, knowing, and with reckless disregard of consequences and IGO No. 20112364 and OAH No. DPSC-IGO-002V-12-10873 and ARP-RCI-0709-11 are relevant to whether DPSCS had knowledge, intent, indifference, or recklessness.
5. Holley ROG 5: Your protest that "housing" is not a "program" is not correct. Housing is a program within the meaning of the ADA and Rehabilitation Act.
6. Holley ROG 6 (also 10, 11: Clearly, the fact that your answer to an interrogatory is "no" is not the basis for an objection and the remainder of your answer makes no sense.

7. Holley ROG 13:  You agree to provide about Case Management at RCI and ECI.  This is insufficient, as this interrogatory requests details on assignment for each program at RCI and ECI as wall as the Parole Violators Program at Patuxent.  Your response does not appear to address all programs at RCI and ECI or to address the Patuxent program at all.
8. Holley ROG 14:  This is completely nonresponsive and you have not made a showing that providing copies of inmate-facing documents used in programs would be unduly burdensome when those documents are obviously used routinely by DPSCS staff.  Nor does "various means" satisfy the obligation to "identify" available formats or auxiliary aids and services ("to state a description of the service, its purpose, the technical specifications (if in reference to an auxiliary aid or other technology), the facility(ies) at which the service is available, the conditions placed on use of the service (including time, place, and manner restrictions), the means by which the availability of the service is communicated to DPSCS inmates and/or staff (e.g., directive, order, policy, announcement, etc.), the date the service was approved or instituted by DPSCS, and the date the service was discontinued, if applicable.").
9. Delano ROG 3:  This is unresponsive and your failure to respond is not supported by your objections.  Please identify the particular training blind inmates have been provided, including the date(s), subject matter(s), format(s), trainer(s), participant(s), and materials provided, and any other information necessary and sufficient to understand how, when, about what, and to whom such training was provided.
10. Delano ROG 6-7:  Your objections are not appropriate. As you know, Mr, Delano alleges that he was denied participation in the Parole Violators Program.  In your responses to Delano ROGs 4-5, you stated that Mr. Delano was not a "priority candidate," indicating that he was eligible but not high enough on the priority or waitlist.  Therefore, these interrogatories are certainly relevant to Mr. Delano's claims.
11. Delano ROG 8:  You object that this interrogatory seeks information about disabilities other than those at issue in this case.  To the contrary, the interrogatory is limited to "blind people committed to the custody of DPSCS."
12. Delano ROG 11, 12:  This asks for an answer – how, why, and when.  It is doubtful that existing document(s) will provide that response.  Please provide a narrative response.
13. Delano ROG 14:  Your proposed response is not responsive.  We did not merely request what tutors were assigned.  We requested both walkers and tutors who were dismissed or reassigned and the reasons therefor.  In addition, the dismissal of walkers and tutors for blind inmates, including but not limited to Plaintiffs, is relevant, again, to Defendants' knowledge, intent, reckless disregard, and deliberate indifference.
14. Brown ROG 16:  It cannot be an undue burden to identify what programs Plaintiffs are eligible for – DPSCS purports to do that analysis on a regular basis.
15. Brown ROG 18:  Just saying "Dental" and "Pharmacy" does not "identify" the contractor.
16. Brown ROG 20:  Your answers says DPSCS requires compliance in its contracts.  Therefore, representative examples of such contracts should be included in your response.

Regarding individual requests:

1. Brown RFP 5: Even accepting your objections, we would expect that DPSCS had received some documents concerning the subject matter of this litigation from third parties, such as DPSCS contractors. Please confirm that you are producing such documents or that they do not exist. In addition, we object to your refusal to produce documents provided to DPSCS by the Plaintiffs. As you know, DPSCS purports to maintain all correspondence from inmates, including Plaintiffs. On the other hand, inmates, such as Plaintiffs, do not control what they are allowed to keep in their cells, and their possessions are periodically interfered with by DPSCS staff "tossing" or by other inmates cleaning their cells at DPSCS' direction. In addition, DPSCS' receipt of correspondence and materials from Plaintiffs is relevant to DPSCS' knowledge, intent, deliberate indifference, and reckless disregard. While you need not produce correspondence and other materials received from Plaintiffs' counsel, please produce all correspondence directly from Plaintiffs to DPSCS or the other Defendants.

2. Brown RFP 13, 14, 15, 16; Snead RFP 1: Production of written policies and procedures does not suffice for purposes of responding to these requests. Nor does there appear to be any basis for your burdensomeness argument, as this is a very limited universe. As requested, please produce all requested documents. Nor, particularly because this request is from Mr. Brown, who was incarcerated since 2007, is there a basis to object to the time period covered by requests 13 and 14.

3. Brown RFP 20: As DPSCS has stated in its interrogatory answers that, inter alia, it has no ability to gather documents from Third-Party Entities (which Plaintiffs dispute, as that term is defined as DPSCS' agents), that DPSCS assures Third-Party Entities comply with the ADA and Section 504 through its contract terms, and as the terms of DPSCS' contracts with service providers identify who is responsible for providing programs and for ADA/504 compliance, these contracts are relevant to Plaintiffs' claims. In addition, DPSCS has a Procurement Services Unit, which presumably maintains copies of DPSCS contracts. Thus, there does not appear to be any basis for an undue burden argument.

4. Snead RFP 3: DPSCS has maintained that the medical contractor cannot determine whether an inmate should receive the reasonable modification of a single cell, but this answer indicates that only the medical contractor evaluates inmates with disabilities to determine what accommodations are necessary. We do not believe this to be the case. This request does not ask how inmates' disability diagnoses are determined, but how their needed accommodations are determined. Therefore, please provide all policies, practices and procedures by which DPSCS determines what accommodations are necessary.

5. Snead RFP 4: Please confirm that this response concedes that DPSCS has no policies for assessing and documenting reasonable accommodations, auxiliary aids, or reasonable modifications for effectiveness, reasonableness, direct threat, undue burden, or fundamental alteration.

6. James RFP 4: Your response is unresponsive. This request is not aimed at administrative proceedings, but is focused on accommodations for court proceedings and parole hearings.

7. Hopkins RFP 15: This request does not ask about Plaintiffs' participation in work and

    pre-release programs.  Please answer the question asked.
8. Hammond RFP 22, 23:  None of your objections support your refusal to produce the requested documents.  Please produce or state that there are no such documents.

Given the discovery schedule in this case, we need to meet and confer Monday and we need your completed responses and documents immediately. As I know you appreciate, we do not have time for a lengthy back and forth. If we cannot reach a reasonable resolution at our meet and confer, we will have to take these issues to the judge immediately.

Eve


**Eve Hill**
Attorney

**BROWN GOLDSTEIN LEVY**
120 E. Baltimore Street, Suite 1700
Baltimore, MD  21202
Tel.:     410.962.1030 x1311
Fax:     410.385.0869
Email:  **ehill@browngold.com**

**About Brown, Goldstein & Levy, LLP**
Brown, Goldstein & Levy, based in Baltimore, Maryland, handles both civil and criminal litigation and has active practices in many other areas of the law, including family law, disability rights, and health care. For more information, visit www.browngold.com.

Please note that this Firm uses an e-mail filter which may affect receipt of certain e-mails.  If you believe that we have not received your message, please call to confirm receipt of any present and future e-mails.
CONFIDENTIALITY:  This e-mail and any attachments are confidential, except where the e-mail states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return e-mail and delete this e-mail (and any attachments) from your system. Thank you.