IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| ANTHONY BLUE | | |
| STEVEN BROWN | * | |
| WILBERT DELANO | | |
| GREGORY HAMMOND | * | |
| SEDRIC HOLLEY | | |
| RUSSELL HOPKINS | * | |
| JOHNNIE JAMES | | |
| TYRELL POLLEY | * | |
| MAYNARD SNEED | | |
| ROBERT WILSON, | * | |
| | | Civil Action No. RDB-16-945 |
| *Plaintiffs*, | * | |
| | | |
| v. | * | |
| | | |
| DEPARTMENT OF PUBLIC SAFETY AND | * | |
| CORRECTIONAL SERVICES | | |
| STEPHEN MOYER | * | |
| DAYENA M. CORCORAN | | |
| RICHARD MILLER, | * | |
| | | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ....................................................................................................... 1

SUMMARY OF THE AMENDED COMPLAINT ..................................................... 1

LEGAL STANDARD .................................................................................................. 3

ARGUMENT ............................................................................................................... 4

I.   PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIMS FOR RELIEF UNDER § 1983 AGAINST SECRETARY MOYER, COMMISSIONER CORCORAN, OR WARDEN MILLER ..................................................................................................... 4

  A. Plaintiffs Have Failed to Allege That Defendants Were Personally Involved in Any Deprivations of Plaintiffs' Constitutional Rights. ............................. 4

  B. Plaintiffs Have Failed to Allege a Plausible Claim of a Denial of Access to the Courts. .................................................................................................... 6

  C. Plaintiffs Have Failed to Allege a Plausible Claim of Deliberate Indifference Under the Eighth or Fourteenth Amendments. .......................... 9

  D. Defendants Are Entitled to Qualified Immunity from Plaintiffs' Constitutional Claims .................................................................................... 13

II.  PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIMS FOR RELIEF UNDER THE ADA. ............................................................................................... 15

  A. Plaintiffs' ADA Claim Is Barred by the Eleventh Amendment. ................ 15

  B. Plaintiffs Have Failed to State an ADA Claim. ......................................... 16

III. PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIMS FOR RELIEF UNDER § 504 OF THE REHABILITATION ACT. ................................................ 16

  A. Denied "Private, Independent, and Effective Access" to Inmate Handbook and Orientation Materials. ........................................................ 18

  B. Denied Ability to Read and Draft Grievances and Lawsuits "Privately and Independently." ..................................................................................... 20

  C. Denied Ability to "Read and Write Mail Privately and Independently." ... 22

  D. Denied Access to Unspecified Work and Educational Programs. ............. 23

  E. Denied Opportunity to Navigate the Prison Without Escort. .................... 25

  F. Denied Single Celling and Housing Status of Their Choosing. ................ 26

CONCLUSION .......................................................................................................... 28

# TABLE OF AUTHORITIES

Pages

## Cases

*A Helping Hand, LLC v. Baltimore Cty., MD*,
    515 F.3d 356 (4th Cir. 2008) ................................................................................20

*Adams v. Rice*,
    40 F.3d 72 (4th Cir. 1994) ................................................................................ 9-10

*Antonelli v. Sheahan*,
    81 F.3d 1422 (7th Cir. 1995) .............................................................................. 8-9

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ........................................................................................16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .........................................................................4, 6, 14, 16

*Barnes v. Young*,
    565 F. App'x 272 (4th Cir. 2014) ..........................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................3, 4, 16

*Booker v. S.C. Dep't of Corr.*,
    855 F.3d 533 (4th Cir. 2017) ...................................................................................9

*Brice v. Va. Beach Corr. Center*,
    58 F.3d 101 (4th Cir. 1995) ....................................................................... 13-14, 16

*Bridges v. Gilbert*,
    557 F.3d 541 (7th Cir. 2009) ..................................................................................24

*Brockington v. Boykins*,
    637 F.3d 503 (4th Cir. 2011).................................................................................16

*Bounds v. Smith*,
    430 U.S. 817 (1977)...........................................................................................7, 28

*Carter v. Mandel*,
    573 F.2d 172 (4th Cir. 1978) ...................................................................................9

*Chase v. O'Malley*,
    466 F. App'x 185 (4th Cir. 2012) ..........................................................................26

*City & Cty. of San Francisco, Calif. v. Sheehan,*
   135 S.Ct. 1765 (2015) .................................................................................17

*Cochran v. Morris,*
   73 F.3d 1310 (4th Cir. 1996) ....................................................................22

*Colon v. New York State Dep't of Corr. & Cmty. Supervision,*
   No. 15-Civ-7432 (NSR), 2017 WL 4157372 (S.D.N.Y. Sept. 15, 2017) ...........................22, 29

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ..................................................................................10

*Danser v. Stansberry,*
   772 F.3d 340 (4th Cir. 2014) ....................................................................11

*Dee v. Maryland Nat. Capitol Park & Planning Comm'n,*
   Civ. CBD-09-491, 2010 WL 3245332 (D. Md. Aug. 16, 2010) ................... 20-21, 23

*DeMallory v. Cullen,*
   855 F.2d 442 (7th Cir.1988) .......................................................................9

*Doe v. Univ. of Maryland Med. Sys. Corp.,*
   50 F.3d 1261 (4th Cir. 1995) ........................................................18, 27, 28

*Evans v. Chalmers,*
   703 F.3d 636 (4th Cir. 2013) .............................................................. 5, 6-7

*Farmer v. Brennan,*
   511 U.S. 825 (1994) .......................................................................11, 13, 14

*Ford v. Harvey,*
   106 F. App'x 397 (6th Cir. 2004) ...............................................................31

*Hall v. Maryland,*
   433 F.Supp. 756 (D. Md. 1977) ...................................................................9

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ..................................................................................15

*Havens v. Colorado Dep't of Corr.,*
   897 F.3d 1250 (10th Cir. 2018) ........................................................ 23-24, 29, 30

*Hewitt v. Helms,*
   459 U.S. 460 (1983) ..................................................................................31

*Hope v. Pelzer,*
   536 U.S. 730 (2002) ..............................................................................15, 16

*Huber v. Howard Cty., Md.*,
   849 F. Supp. 407 (D. Md. 1994) ........................................................................19

*Jackson v. Lightsey*,
   775 F.3d 170 (4th Cir. 2014)...........................................................................13

*Jarboe v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
   No. Civ.A. ELH-12-572, 2013 WL 1010357 (D. Md. Mar. 13, 2013) .............19, 20

*Jones v. Bishop*,
   No. CV CCB-16-2893, 2018 WL 1521874 (D. Md. Mar. 28, 2018)......................26

*Jones v. Chandrasuwan*,
   820 F.3d 685 (4th Cir. 2016)...........................................................................15

*Knapp v. Northwestern Univ.*,
   101 F.3d 473 (7th Cir. 1996)...........................................................................27

*Koenig v. Maryland*,
   No. Civ.A. CCB-09-3488, 2010 WL 148706 (D. Md. Jan. 13, 2010) ...................19

*Kogut v. Ashe*,
   592 F. Supp. 2d 204 (D. Mass. 2008) ..............................................................28

*Levy v. Mote*,
   104 F. Supp. 2d 538 (D. Md. 2000) ................................................................25

*Lewis v. Casey*,
   518 U.S. 343 (1996).....................................................................................7, 9

*Lopez v. Kirkpatrick*,
   505 F. App'x 58 (2d Cir. 2012)........................................................................26

*Love v. Westville Corr. Ctr.*,
   103 F.3d 558 (7th Cir. 1996)...........................................................................30

*Makdessi v. Fields*,
   789 F.3d 126 (4th Cir. 2015)................................................................ 10-11, 14

*Malley v. Briggs*,
   475 U.S. 335 (1986).......................................................................................18

*Mann v. Adams*,
   855 F.2d 639 (9th Cir. 1988) ............................................................................8

*Mason v. Corr. Med. Servs., Inc.*,
   559 F.3d 880 (8th Cir. 2009) .....................................................................24, 29

*Mathews v. Eldridge*,
    24 U.S. 319 (1976) .................................................................................................10

*McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*,
    780 F.3d 582 (4th Cir. 2015) ................................................................................4

*Miller v. Hinton*,
    288 F. App'x 901 (4th Cir. 2008) .......................................................................24

*Mims v. Williams*,
    No. 1:08CV521-01-MU, 2009 WL 454598 (W.D.N.C. Feb. 23, 2009)...................8

*Monell v. Dept. of Social Services*,
    436 U.S. 658 (1978)...............................................................................................5

*Montanye v. Haymes*,
    427 U.S. 236 (1976) .............................................................................................31

*Muhammad v. Kaloroumakis*,
    No. Civ. CCB-14-1794, 2015 WL 1712594 (D. Md. Apr. 14, 2015) .....................28

*Owens v. Lott*,
    372 F.3d 267 (4th Cir. 2004).................................................................................16

*Paulone v. City of Frederick*,
    787 F. Supp. 2d 360 (D. Md. 2011)......................................................................20

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ................................................................................15, 16, 17

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)...............................................................................................14

*Pevia v. Comm'r of Corr.*,
    No. CV ELH-17-0273, 2018 WL 4052244 (D. Md. Aug. 24, 2018) .......................8

*Quern v. Jordan*,
    440 U.S. 332 (1979)..............................................................................................14

*Raynor v. Pugh*,
    817 F.3d 123 (4th Cir. 2016) .........................................................................11, 13

*Rich v. Bruce*,
    129 F.3d 336 (4th Cir. 1997).................................................................................11

*Ridpath v. Bd. of Governors Marshall Univ.*,
    447 F.3d 292 (4th Cir. 2006)..................................................................................15

*Rochin v. California*,
    342 U.S. 165 (1952) ...................................................................................................10

*Ruefly v. Landon*,
    825 F.2d 792 (4th Cir. 1987) .....................................................................................11

*Savko v. Rollins*,
    749 F. Supp. 1403 (D. Md. 1990) ...............................................................................8

*Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*,
    673 F.3d 333 (4th Cir. 2012) .....................................................................................18

*Shaw v. Stroud*,
    13 F.3d 791 (4th Cir. 1994)) .......................................................................................5

*Sheehan v. Beyer*,
    51 F.3d 1170 (3d Cir. 1995) .......................................................................................31

*Spencer v. Earley*,
    278 F. App'x 254 (4th Cir. 2008) .............................................................................18

*Spivey v. Dep't of Pub. Safety & Corr. Servs.*,
    No. Civ. JFM-09-440, 2009 WL 5177285 (D. Md. Dec. 18, 2009) .........................31

*Strickler v. Waters*,
    989 F.2d 1375 (4th Cir.1993) ............................................................................. 7-8, 9

*Torcasio v. Murray*,
    57 F.3d 1340 (4th Cir. 1995) .....................................................................................30

*United States v. Georgia*,
    546 U.S. 151 (2006) ...................................................................................................18

*Vinnedge v. Gibbs*,
    550 F.2d 926 (4th Cir. 1977) .......................................................................................5

*Wells v. Thaler*,
    460 F. App'x 303 (5th Cir. 2012) .......................................................................24, 26

*Whitley v. Albers*,
    417 U.S. 312 (1986) ...................................................................................................11

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989) ...............................................................................................17-18

*Wilson v. Layne*,
    526 U.S. 603 (1999) ...................................................................................................16

## Statutes & Rules

29 U.S.C. § 794...................................................................................................1, 18, 19, 20
*(Rehabilitation Act, Section 504)*

34 C.F.R. § Pt. 104, App. A, subpt. A(5)..................................................................27

42 U.S.C § 1983......................................................................................................1, 4, 14

42 U.S.C. § 12103...........................................................................................20, 23, 25-26

42 U.S.C. §§ 12131-12165, 12201-12213 .....................................................1, 17, 18, 19
*(Americans with Disabilities Act, Title II)*

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 3

Md. Code Ann., State Gov't §§ 12-103(2), 104(a)(1) ................................................14

## INTRODUCTION

Plaintiffs, who identify themselves as current and former inmates of the Maryland Division of Correction ("DOC") who are blind, have filed a four-count First Amended Complaint ("complaint") (ECF No. 23) in which, among other claims, they seek to hold senior officials of the Department of Public Safety and Correctional Services ("the Department") personally liable for purportedly denying plaintiffs' constitutional rights. The named individual defendants in plaintiffs' complaint are Stephen Moyer, the Secretary of Public Safety and Correctional Services; Dayena Corcoran, the former Commissioner of Correction; and Richard Miller, the former warden of the Roxbury Correctional Institution ("RCI"), an institution of the DOC. Plaintiffs bring suit under 42 U.S.C § 1983 against the individual defendants in their individual and official capacities for alleged violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiffs have also sued the Department and Secretary Moyer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, 12201-12213, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act"). Defendants now move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiffs have failed to state any plausible claim under § 1983, the ADA, or the Rehab Act.

## SUMMARY OF THE AMENDED COMPLAINT

In their First Amendment claims, plaintiffs allege that defendants deprived them of their constitutional right of access to courts by failing to provide them copies of the DOC Inmate Handbook; "orientation materials"; and grievance and complaint forms in "accessible" format, a result of which is that they "must rely on sighted inmates to help them." Am. Compl. ¶¶ 3-5. They also allege that because they have been denied unidentified "auxiliary aids or services," they are unable to "access the [prison] library's research materials independently and privately," *id.*, ¶ 36, and thus "are forced to rely on sighted inmates to . . . conduct their legal research for them." *Id.*

1

While acknowledging that they have "pursu[ed] legal action with the help of sighted inmates," plaintiffs allege that "they have no way of verifying that the information they intend to submit" is accurate, complete, or contains proper citations to authority. *Id.* ¶ 38. They also allege that their reliance on sighted inmates to assist them has exposed them to unspecified threats of "extortion, sexual exploitation, and violence," *id.* ¶ 39, and that they have had "grievances and lawsuits," which they do not identify, "dismissed due to mistakes by sighted inmates" I*d.* ¶ 41.

In their Eighth Amendment claims, plaintiffs allege that defendants exposed them to "serious risk of harm" by declining to confine them in single-cells and by having sighted inmates escort them to the dining hall, library, and other areas of the institution where they participate in vocational and institutional programming. Am. Compl. ¶¶ 91-92. Plaintiffs allege without factual elaboration that, as a result of being celled with other inmates, they have suffered "serious harm, including physical and sexual abuse, extortion, disruption of their relationships with their loved ones, and severe anxiety and emotional distress." Am. Compl. ¶ 93. Plaintiffs make similar generalized allegations regarding RCI's program of having sighted inmates, known as "walkers," "guide blind inmates through the facilities," *id.* ¶ 61. Plaintiffs complain that "[b]y facilitating dependence on other inmates, the walker program . . . exposes Plaintiffs to a substantial risk of extortion, exploitation, and violence." *Id.* ¶ 63.

In their ADA and Rehab Act claims, plaintiffs assert that the vocational, educational, and work release programs provided to sighted inmates are not "equally available to Plaintiffs." Am. Compl. ¶¶ 53, 59. In particular, plaintiffs state that "[i]nmates within [the Department] may earn diminution credits and wages through work assignments," *id.* ¶ 48, and allege that "Defendants have denied Plaintiffs placement in or removed them from certain jobs," which plaintiffs do not identify, "based on unfounded safety concerns and stereotypes about the capabilities of blind

individuals." Am. Compl. ¶ 49. Further, plaintiffs allege that they have been denied private, independent, and effective access to the Inmate Handbook, "orientation materials," mail service, the grievance process and courts, and the opportunity to navigate the prison without escort, despite being provided assistance with all of these "services" from other inmates. Am. Compl. ¶¶ 3, 33-40, 68-70, 48-50, 60-62. And they allege that they have been denied single-cell housing and the housing status of their choosing. Am. Compl. ¶¶ 74-76.

## LEGAL STANDARD

A motion made under Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Indeed, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 587 (4th Cir. 2015) ("[T]he Supreme Court has, with *Iqbal* and *Twombly*, rejected the sufficiency of complaints that merely allege the possibility of entitlement to relief, requiring plausibility for obtaining such relief and thus rejecting a complaint in which the plaintiff relies on speculation."), *cert. denied*, 136 S. Ct. 1162 (2016). For the reasons set forth below, plaintiffs' complaint fails to plead with sufficiency any of their claims, and therefore should be dismissed in its entirety.

**ARGUMENT**

I. **PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIMS FOR RELIEF UNDER § 1983 AGAINST SECRETARY MOYER, COMMISSIONER CORCORAN, OR WARDEN MILLER.**

A. **Plaintiffs Have Failed to Allege That Defendants Were Personally Involved in Any Deprivations of Plaintiffs' Constitutional Rights.**

Plaintiffs' complaint contains no plausible claims against the individual defendants for violating plaintiffs' First Amendment right of access to courts or their right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. First, plaintiffs have alleged no facts whatsoever of personal involvement by any defendant in the alleged unconstitutional conduct. It is well settled that liability under 42 U.S.C. § 1983 must be premised on personal conduct of the defendant and cannot rest on a theory of *respondeat superior* or any other type of vicarious liability. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691–695 (1978). *See also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (for liability to arise under § 1983, state official must have acted personally to cause a deprivation of constitutional rights).

Absent an allegation of direct involvement by a supervisor in causing an injury, a supervisor may be held liable only if the plaintiff demonstrates that: (1) the supervisor had "knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury" to plaintiff; (2) the supervisor's response "was so inadequate as to show 'deliberate indifference to or tacit authorization of'" the alleged conduct; and (3) "'an affirmative causal link' between the supervisor's inaction" and the plaintiff's injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Plaintiffs have failed to meet this rigorous standard. "[T]he Supreme Court explained in *Iqbal* that 'a supervisor's mere knowledge' that his subordinates are engaged in unconstitutional

conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for 'his or her own misconduct.'" *Evans v. Chalmers*, 703 F.3d 636, 660-61 (4th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 677).  Thus, "'a plaintiff must plead that *each* [supervisory] defendant, through the official's *own individual actions*, has violated the Constitution.'"  *Chalmers*, 703 F.3d at 661 (quoting *Iqbal*, 556 U.S. at 676).  Plaintiffs have not done so. Nearly all of the references to the individual parties are contained in the "Parties, Jurisdiction, and Venue" section of the complaint, which merely identifies the defendants as supervisors and alleges, in conclusory fashion, that they were "aware of . . . policies and practices regarding blind inmates," and "the requirements of federal law . . . ." Am. Compl. ¶¶ 23, 24, 25.  Glaringly absent are *any* allegations that any particular defendant caused injury to any particular plaintiff.

Nor are there factual allegations in the numbered counts themselves indicating how any defendant personally violated any plaintiff's constitutional rights.  The sole reference to any individual defendant in the counts of the complaint is plaintiffs' statement that they told Warden Miller that "their dependence on sighted inmates to access the grievance and court processes puts them in danger."  Am. Compl. ¶ 46.  This conclusory statement, made without any supporting factual assertions whatsoever, falls far short of pleading Warden Miller's personal involvement in any unconstitutional acts.

Plaintiffs have failed to allege any facts demonstrating that Secretary Moyer, Commissioner Corcoran, or Warden Miller had even "mere knowledge" that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to plaintiffs, let alone that they were indifferent to or tacitly approved it.  To allow Plaintiffs to proceed with the threadbare assertion that defendants were "aware" of "policies and practices" and the requirements of the law, Am. Compl. ¶¶ 23, 24, 25, would inappropriately burden defendants with having to defend against claims bereft

of any specific alleged conduct relating to any individual party. *See Iqbal*, 556 U.S. at 685 ("If a Government official is to devote time to his or her duties . . . it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation . . . exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government."); *Chalmers*, 703 F.3d at 665 (dismissing insufficient pleadings because allowing them "to proceed would let litigation loose in such a fashion as to impair the ability of the criminal justice system to do its job. . . . That is to say, individuals would be pulled into the coercive proceedings of courts when they have no business being there."). Accordingly, plaintiffs' claims against the individual defendants should be dismissed.

**B.      Plaintiffs Have Failed to Allege a Plausible Claim of a Denial of Access to the Courts.**

Plaintiffs have also failed to allege facts demonstrating that they have been denied access to the courts in contravention of the First Amendment. As noted above, plaintiffs' claim is premised on the defendants' alleged failure to "make reasonable modifications and/or provide auxiliary aids and services to make the grievance process, courts, and library accessible to Plaintiffs," Am. Compl. ¶ 87, but plaintiffs overstate their denial of access to courts claim. In *Bounds v. Smith*, 430 U.S. 817, 825 (1977), the Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Constitution "does not guarantee inmates the wherewithal to transform themselves into litigating engines," but rather gives them the "tools . . . to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

As the Fourth Circuit has noted, the Court in *Bounds* "did not hold that there is a right of access to a law library; it held that there is a right of access to the *courts*." *Strickler v. Waters*, 989 F.2d 1375, 1385 (4th Cir.1993). Thus, "[i]t does not inexorably follow from the fact that an institution's library is inadequate or that access to that library is restricted . . . that the prisoner was denied access to the courts." *Id.*; *see also Mims v. Williams*, No. 1:08CV521-01-MU, 2009 WL 454598, at *1 (W.D.N.C. Feb. 23, 2009) (rejecting access-to-courts claim based on lack of prison law library because prison had a legal-services program that "provides inmates with the constitutionally mandated level of assistance necessary to protect their meaningful access to the court").

For Maryland prisoners, access to courts is established by "the array of services provided by the Office of the Public Defender and the Prisoner Assistance Program of the Legal Aid Bureau," *see Savko v. Rollins*, 749 F. Supp. 1403, 1408 (D. Md. 1990), which has been succeeded by the Prisoner Rights Information System of Maryland ("PRISM"), and by the law libraries and the Library Assistance to State Inmates ("LASI") program. *See Pevia v. Commissioner of Corr.*, No. CV ELH-17-0273, 2018 WL 4052244, at *12 n.10 (D. Md. Aug. 24, 2018) ("This [C]ourt has found that the combination of services provided to [DOC] prisoners through private contract with outside agencies such as . . . . PRISM, the Office of the Public Defender, and LASI, is sufficient to ensure their right of access to the courts."). Nowhere in the complaint do plaintiffs even allege that they are unable to access the assistance provided by the Office of the Public Defender, Legal Aid Bureau, PRISM, or LASI, or that such assistance is in any way inadequate.

Similarly, there is no "fundamental" right to an institutional inmate complaint resolution process, *see Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), and alleged defects in an inmate grievance system do not violate the Constitution.

*Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995) (prisoner's allegation that jail grievance procedures were inadequate to redress his grievances did not state claim for violation of due process). *See also Booker v. South Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure."). Thus, when viewed under the proper legal standard for assessing a prisoner's access to courts claim, plaintiffs' allegations do not pass the plausibility test.

Just as importantly, plaintiffs have failed to plausibly allege facts satisfying the second component of a denial of access to courts claim: "actual injury." *See Lewis*, 518 U.S. at 352-54. To prevail, a prisoner must demonstrate that the actions of prison officials "hindered his efforts to pursue" a constitutionally protected legal claim. *Id.* at 351. Absent a showing of such actual injury caused by the conduct of prison officials, such as the dismissal of an action filed by the prisoner, there is no constitutional violation. *Id.*; *see also Strickler*, 989 F.2d at 1385 ("'A demonstration of inability to present a legal claim is an essential ingredient . . . because the prisoner must be able to show that the rules interfered with his entitlement (access to the courts) rather than with a mere instrument for vindicating an entitlement (access to books)." (quoting *DeMallory v. Cullen*, 855 F.2d 442, 452 (7th Cir.1988) (Easterbrook, J., dissenting))).

Plaintiffs have alleged injury in only a summary and conclusory manner. *See* Am. Compl. ¶ 42 (alleging that "plaintiffs have been unable to effectively initiate or complete the grievance or court processes or communicate effectively with their attorneys," and "have had their grievances and lawsuits dismissed due to the errors of the sighted inmates upon whom plaintiffs are forced to rely."). This fails to meet the actual injury standard. Indeed, a cursory review of the docket demonstrates that plaintiffs have not been hampered at all in their abilities to file suit; in this consolidated action alone, numerous *pro se* suits were filed by the plaintiffs. Accordingly, this

Court should dismiss plaintiffs' First Amendment claims against the individual defendants in Count I of the complaint.

### C.  Plaintiffs Have Failed to Allege a Plausible Claim of Deliberate Indifference Under the Eighth or Fourteenth Amendments.

The complaint contains no plausible claims that Secretary Moyer, Commissioner Corcoran, or Warden Miller were deliberately indifferent to an alleged "substantial risk of serious harm" to any plaintiff.  *See* Am. Compl. ¶ 93.  As set forth below, plaintiffs have failed to meet any of the elements of a constitutional failure to protect claim.  Accordingly, plaintiffs' Eighth and Fourteenth Amendment claims should be dismissed.[1]

### 1.  Elements of a Failure to Protect Claim.

"[N]ot every injury suffered by a prisoner at the hands of another 'translates into constitutional liability for prison officials responsible for the victim's safety.'"  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To succeed on an Eighth Amendment failure-to-protect claim, a prisoner must prove that the defendant (i) had knowledge of a substantial risk of serious harm and (ii) acted with deliberate indifference, a criminal recklessness standard, to the prisoner's safety.  *Farmer*, 511 U.S. at 834.

---

[1] Plaintiffs do not allege a substantive violation of the Fourteenth Amendment.  Rather, they invoke the Fourteenth Amendment because it "incorporate[s] [the Eighth Amendment] against the states." *See* Am. Compl. ¶ 91.  To the extent plaintiffs have attempted to set forth a Fourteenth Amendment claim, their attempt is unsuccessful.  To plead a Fourteenth Amendment due process violation, a plaintiff must (1) identify a private interest; (2) show a deprivation of that interest by the State; and (3) show that the private interest outweighs any countervailing governmental interest.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Plaintiffs have not met any of these requirements.  Nor have plaintiffs successfully alleged a denial of substantive due process, because that requires plaintiffs to plausibly allege conduct of a governmental defendant so egregious that it "'shocks the conscience' and violates the decencies of civilized conduct.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-3 (1952)).  No such facts are alleged against the defendants.

Thus, a two-part inquiry that includes both an objective and a subjective component must be satisfied before liability can be established.  *See Raynor v. Pugh,* 817 F.3d 123, 127 (4th Cir. 2016).  The objective inquiry asks whether the plaintiff "'establish[ed] a serious deprivation of his rights in the form of a serious or significant physical or emotional injury,' or a substantial risk thereof."  *Id.* (quoting *Danser v. Stansberry,* 772 F.3d 340, 346-47 (4th Cir. 2014)).  The subjective component requires a showing "that the prison official had a 'sufficiently culpable state of mind,' which . . . consists of 'deliberate indifference to inmate health or safety.'"  *Raynor*, 817 F.3d at 127 (quoting *Farmer*, 511 U.S. at 834).  Under the subjective test, "actual knowledge of facts from which a reasonable person might have inferred the existence of the substantial and unique risk to [the prisoner] . . . is not enough to establish a violation of the Eighth Amendment," because "the defendant official . . . *must actually have drawn the inference*."  *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997) (emphasis added). Negligence alone does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Ruefly v. Landon*, 825 F.2d 792, 793 (4th Cir. 1987); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the prohibited conduct.").

2.    **Plaintiffs Have Failed to Meet the Objective Component of an Eighth Amendment Claim Because They Have Failed to Allege Facts Constituting a "Substantial" or "Excessive" Risk of Serious Harm.**

The only risk plaintiffs allege is that "requiring blind inmates" to rely on sighted inmates for assistance "makes blind inmates vulnerable to exploitation, extortion, and violence," Am. Compl. ¶ 93, but they provide no facts to support this allegation.  Absent from the complaint are any particularized allegations that any plaintiff, or any other blind inmate, was ever harmed, or even threatened with harm, by another inmate who provided reading assistance to a blind inmate. Plaintiffs' complaints about the walker program, by which sighted inmates guide blind inmates

10

around the facility to afford them access to prison programs, suffers from a similar infirmity. Plaintiffs allege that they "have been threatened by their walkers when they asked the walkers to perform tasks the walkers did not want to do, or when they complained about their walkers' behavior." *Id.* at ¶ 63.  Again, however, plaintiffs supply no factual support for these conclusory statements.  Plaintiffs do not provide, for instance:  the name of the plaintiff and other inmate allegedly involved; when the incident purportedly occurred; the nature of the alleged threat; whether the affected plaintiff suffered any injury; or whether the alleged occurrence was ever reported, and if so, to whom and in what manner.

Nor do plaintiffs allege *any* facts to render plausible their claims that the refusal to single-cell them leaves them "more vulnerable to theft and less able to forestall or defend against attacks," or that their cellmates "may be provoked by their disability and behavior resulting from their disability, including bumping into a cellmate or a cellmate's possessions or failing to notice and clean up a mess." Am. Compl., ¶¶ 79, 80.  No plaintiff alleges that he was ever attacked by a cell mate (or anyone else), or that any cell mate ever threatened a plaintiff, or even complained, when a plaintiff "bump[ed]" into a cell mate or the cell mate's possession or made a "mess" in the cell and failed to clean it up.  Plaintiffs' speculative assertions, supported by no plausible factual allegations whatsoever, that certain harms "may" befall them fall far short of showing that they have been exposed to an "objectively intolerable risk" as required to state an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 846.

### 3. Plaintiffs Have Failed to Plausibly Allege That Any Defendant Was Deliberately Indifferent to any Risk of Serious Harm to Any Plaintiff.

Plaintiffs' allegations also fail to meet the subjective component of the Eighth Amendment test, which requires not only "[a]ctual knowledge or awareness on the part of" the defendant to the substantial and excessive risk of harm to the prisoner, *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d

101, 105 (4th Cir. 1995), but also a showing that the official acted with "deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  Plaintiffs allege no facts plausibly demonstrating that Secretary Moyer, Commissioner Corcoran, or Warden Miller had "actual knowledge" of *any* risk of harm to plaintiffs.  As noted previously, the individual defendants are barely mentioned in the amended complaint, and the complaint is thus devoid of any facts demonstrating that a defendant was aware of a serious risk of harm to any plaintiff.

An injury or substantial risk "might be so obvious that the factfinder could conclude that the [correctional employee] *did* know of it because he could not have failed to know of it."  *Brice*, 58 F.3d at 105 (citations omitted).  For instance, an official could be found to have actual knowledge if a "'substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,'" and an official "'had been exposed to information concerning the risk and thus must have known about it.'" *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 842).  Absent from plaintiffs' complaint, however, are any factual allegations even remotely suggesting that there was such a pervasive and longstanding threat about which Secretary Moyer, Commissioner Corcoran, or Warden Miller must have known.

Plaintiffs' Eighth Amendment claims thus contain no more than the very type of "un-adorned, the-defendant[s]-unlawfully-harmed-me accusation[s]," without any "factual enhancement," that the Court cautioned against in *Twombly and Iqbal*.  *See Iqbal*, 556 U.S. at 677.  Because plaintiffs have failed to provide "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable" under the Eighth Amendment, *id*. at 678, the Court should dismiss Count II of the complaint.[2]

---

[2] To the extent plaintiffs' § 1983 claims are brought against Secretary Moyer, Commissioner Corcoran, and Warden Miller in their official capacities, they fail for the additional reason that they are barred by the Eleventh Amendment to the United States Constitution.  It is

**D.      Defendants Are Entitled to Qualified Immunity from Plaintiffs'
          Constitutional Claims.**

Defendants are entitled to qualified immunity from plaintiffs' claims under the First,

Eighth, and Fourteenth, amendments.  Qualified immunity "protects government officials 'from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555

U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Typically, "[d]etermining whether qualified immunity is appropriate is a two-step inquiry."

*Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (citing *Pearson,* 555 U.S. at 232)).

"First, a court must decide whether the facts that a plaintiff has shown make out a violation of a

constitutional right."  *Id.* "Second, the court must consider whether the right at issue was 'clearly

established' at the time of the alleged misconduct."  *Id.*  Judges are "permitted to exercise their

sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at

236.

Ultimately, the lodestar for whether a right was clearly established is whether the law "gave

the officials 'fair warning' that their conduct was unconstitutional."  *Ridpath v. Bd. of Governors*

---

well established that the Eleventh Amendment bars suit against a state, a state agency, and state
officials sued in their official capacities in federal court, absent a valid waiver.  U.S. Const., amend.
XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).  Section 1983 does not
abrogate state immunity, *see Quern v. Jordan*, 440 U.S. 332, 345 (1979) and the State of Maryland
has not waived its immunity from private suits in federal court.  *See* Md. Code Ann., State Gov't
§§ 12-103(2), 104(a)(1) (LexisNexis 2014); *Pennhurst*, 465 U.S. at 99 n.9 ("[T]he Court
consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver
of the Eleventh Amendment immunity in the federal courts.").  Additionally, because defendants
Corcoran and Miller are no longer employed by the Department, they lack the ability to be sued in
an official capacity.

*Marshall Univ*., 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  The contours of the constitutional right "must be sufficiently clear that a reasonable official would understand what he is doing violates that right."  *Hope*, 536 U.S. at 753 (quotation omitted).  Although "'[c]learly established' does not mean that 'the very action in question has previously been held unlawful' . . . it does require that, 'in the light of pre-existing law the unlawfulness [of the official's conduct] must be apparent.'" *Owens v. Lott*, 372 F.3d 267, 278 (4th Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)) (brackets in original); s*ee also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (finding that "clearly established" does not "require a case directly on point . . . but existing precedent must have placed the statutory or constitutional question beyond debate.").

"[W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded," because "the sufficiency of [plaintiff's] pleadings is both inextricably intertwined with and directly implicated by the qualified immunity defense." *Iqbal*, 556 U.S. at 671.  And, in assessing the merits of the qualified immunity defense, the threshold inquiry—whether the plaintiff has alleged a constitutional violation—is especially appropriate where "discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all." *Pearson*, 555 U.S. at 236.  *See also Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (dismissal of a complaint based on qualified immunity is appropriate when "the face of the complaint clearly reveals" that the defense is "meritorious") (citations omitted).

Defendants are entitled to qualified immunity under both prongs of the qualified immunity standard.   First, as demonstrated above, plaintiffs have failed to allege facts plausibly demonstrating that any right of plaintiffs protected by the First, Eighth, or Fourteenth Amendment

14

is implicated in this case.  Plaintiffs have also failed to allege personal conduct by any defendant in alleged constitutional violations.  Thus, the facts pleaded by plaintiffs "do not make out a constitutional violation at all" against the defendants.  *Pearson,* 555 U.S. at 236.

Even if plaintiffs had stated a plausible claim that the defendants violated a constitutional right, defendants would still be entitled to qualified immunity because "the right's contours were [not] sufficiently definite that any reasonable official in [the defendants'] shoes would have understood that [they were] violating it." *City & County of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).  As demonstrated above, plaintiffs' First, Eighth, and Fourteenth Amendment claims are devoid of any "controlling authority," *al-Kidd*, 563 U.S. at 742, that adopts plaintiffs' expansive and extraordinary theories of a prisoner's constitutional right to access the courts and to be free from unreasonable risk of harm.  Nor do plaintiffs cite a "consensus of cases of persuasive authority" that has "placed the . . . constitutional question[s] beyond debate."  *Id.* at 741-2.  Accordingly, defendants are entitled to qualified immunity.

## II.    PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIMS FOR RELIEF UNDER THE ADA.

### A.    Plaintiffs' ADA Claim Is Barred by the Eleventh Amendment.

Plaintiffs' claims brought under Title II of the ADA should be dismissed because the State has Eleventh Amendment immunity from suit.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).[3]  In *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Supreme Court

---

[3] Although plaintiffs do not specify whether they bring their ADA claim against Secretary Moyer in his official or individual capacity, Title II of the ADA does not permit individual capacity suits against a state official.  *Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (internal citations omitted). Thus, although plaintiffs assert their ADA

held that the ADA abrogates state sovereign immunity for conduct that also violates the Fourteenth Amendment to the United States Constitution. The Supreme Court has not, however, held that state sovereign immunity is abrogated for conduct that does not rise to the constitutional level. *See id*.; *see also Spencer v. Earley*, 278 F. App'x 254, 257-58 (4th Cir. 2008). Indeed, the Fourth Circuit upheld the dismissal of an ADA claim on the basis of state sovereign immunity where the conduct did not violate the Fourteenth Amendment. *Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014). Because plaintiffs have not stated a Fourteenth Amendment claim, as argued above in § I, the State is immune from suit for the purported ADA violations alleged in the complaint. Accordingly, plaintiffs' ADA claims should be dismissed.

### B.   Plaintiffs Have Failed to State an ADA Claim.

Claims brought under Title II of the ADA are "substantially the same" as those brought under § 504 of the Rehab Act, and courts typically analyze them together. *Seremeth v. Board. of County Comm'rs Frederick County*, 673 F.3d 333, 336 (4th Cir. 2012); *Doe v. University of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). Plaintiffs' ADA claims are based upon the same purported conduct that serves as the basis of their Rehab Act claims, and are thus addressed at length below in Section III. For the reasons set forth below, plaintiffs have failed to plead with sufficiency that any of the defendants violated Title II of the ADA.

### III.   PLAINTIFFS HAVE FAILED TO STATE ANY PLAUSIBLE CLAIMS FOR RELIEF UNDER § 504 OF THE REHABILITATION ACT.

To state a claim under § 504 of the Rehab Act, plaintiffs must sufficiently plead that they (1) are qualified individuals with a disability; (2) were denied the benefits of a program or service of a public entity that receives federal funds; and (3) were denied such benefits "due to

---

claim against Secretary Moyer in addition to the Department, it should be construed as asserted only against the State.

discrimination solely on account of the disability."[4] *Koenig v. Maryland*, No. Civ.A. CCB-09-3488, 2010 WL 148706, at *1 (D. Md. Jan. 13, 2010), *aff'd*, 382 F. App'x 273 (4th Cir. 2010); 29 U.S.C. § 794(a). Plaintiffs' Rehab Act claims fail because plaintiffs fail to plead with sufficiency that they were denied benefits of a service, program, or activity by reason of their disability.

There are three distinct grounds upon which relief may be pursued under § 504 of the Rehab Act and Title II of the ADA: "(1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 362 (4th Cir. 2008). Plaintiffs do not specify which theory they base their claims upon, but rather conflate allegations of intentional discrimination with a purported failure to make reasonable accommodations. *See, e.g.*, Am. Compl. ¶¶ 4-6. Under either theory, punitive damages may not be awarded, and plaintiffs must show intentional discrimination or disparate treatment *by the defendants* to be awarded compensatory damages. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 373 (D. Md. 2011).

---

[4] As indicated above, although defendants are entitled to sovereign immunity from plaintiffs' ADA claims, to the extent the ADA claims may proceed, they are analyzed in this section because they are substantially the same as plaintiffs' Rehab Act claims. There are two principal differences between Title II of the ADA and § 504 of the Rehab Act: (1) the Rehab Act applies only to public entities that receive federal financial assistance; and (2) the Rehab Act adds the word "solely" to the ADA's requirement for a plaintiff to show discrimination by reason of the disability, and thus imposes a stronger causation standard between the disability and the purported discrimination than the ADA. *Jarboe v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. Civ.A. ELH-12-572, 2013 WL 1010357, at *3 (D. Md. Mar. 13, 2013). With respect to the first difference, defendants do not contest the applicability of the Rehab Act to the Department for the purposes of the instant motion. *See Huber v. Howard County, Md.*, 849 F. Supp. 407, 415 (D. Md. 1994), *aff'd*, 56 F.3d 61 (4th Cir. 1995). With respect to the second difference, plaintiffs have failed to meet their burden to plead the causation element under both the ADA and Rehab Act standards, and thus the claims are appropriately analyzed together.

The allegations in the complaint demonstrate that plaintiffs cannot make either showing. Under the Rehab Act and the ADA, states may be required to make reasonable modifications to rules, policies, or practices, or to provide auxiliary aids and services to ensure that disabled persons can benefit from certain services, programs, or activities. *Jarboe*, 2013 WL 1010357, at *4 (citing *A Helping Hand, LLC*, 515 F.3d at 362). With respect to blindness, auxiliary aids may include "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments." 42 U.S.C. § 12103.  Whether a modification is reasonable depends upon the "totality of the circumstances; whether the service, program, or activity . . . 'when viewed in its entirety,' is readily accessible."  *Dee v. Maryland Nat'l Capitol Park & Planning Comm'n*, Civ. CBD-09-491, 2010 WL 3245332, at *5 (D. Md. Aug. 16, 2010) (citation omitted).

"A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities.  Rather, the public entity is obligated to make those modifications that do not 'fundamentally alter the nature of the service or activity of the public entity or impose an undue burden.'" *Miller v. Hinton*, 288 F. App'x 901, 902 (4th Cir. 2008) (citation omitted).  Thus, to succeed on a failure to accommodate theory, a plaintiff must show that the defendants intentionally withheld a required (i.e. reasonable) accommodation, even if they did not intend to violate the law. *Dee,* 2010 WL 3245332, at *7. "It is the intentional withholding of an accommodation that is the intentional discrimination." *Id.*

For the following reasons, plaintiffs have failed to plead plausibly that defendants denied them access to any required services or benefits.

A.    **Denied "Private, Independent, and Effective Access" to Inmate Handbook and Orientation Materials.**

Plaintiffs first claim that they were discriminated against by not being "afforded private, independent, and effective access" to the Inmate Handbook and "orientation materials." Am. Compl. ¶ 3. Critically, plaintiffs do not allege that they have no means of obtaining the information in these documents, and in fact, their awareness of the substance of these documents is readily apparent.[5] Rather, they purport to base their claim on their inability to read these documents personally, without pleading how their access to these materials is ineffective. This is insufficient. *See Colon v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15-Civ.-7432 (NSR), 2017 WL 4157372, at *6-7 (S.D.N.Y. Sept. 15, 2017) ("Plaintiff has ultimately failed to allege why the accommodation he seeks is more reasonable for blind prisoners—and legally required—when compared with the accommodations he already received . . . .").

Moreover, like their constitutional claims, plaintiffs' ADA and Rehab Act claims fail for the additional reason that they have alleged no injury as a result of their purported ineffective access to these materials. "The mere violation of the ADA does not alone establish injury. A plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA caused him actual injury before such plaintiff can recover." *Levy v. Mote*, 104 F. Supp. 2d 538, 544 (D. Md. 2000). The only "injury" plaintiffs plead is "the risk of discipline or confrontations with correctional officers or other inmates." Am. Compl. ¶ 30. Just like their First and Eighth Amendment claims, plaintiffs cannot base their ADA and Rehab Act claims on a speculative risk that has caused them no tangible injury. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)

---

[5] Plaintiffs know, for instance, that inmates are given orientation materials "with information specific to the institution in which they are incarcerated," Am. Compl. ¶ 28, and they have a detailed understanding of the inmate grievance process and associated forms that inmates must complete. Am. Compl. ¶ 32. Plaintiffs could not have this working knowledge without access to these materials.

("Specificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations. A prisoner must also identify an actual injury resulting from official conduct."). The fact that the only injury plaintiffs allege is a speculative one evidences the sufficiency of their current access to these materials.

Furthermore, plaintiffs have pleaded no facts plausibly showing any discriminatory actions or intent by the defendants. *See Dee*, 2010 WL 3245332, at *7. There is no mention, for instance, of what additional accommodations plaintiffs ever requested that defendants denied. Indeed, as noted above, references to the defendants are almost entirely absent from the complaint itself. Plaintiffs have therefore failed to state a plausible claim.

### B. Denied Ability to Read and Draft Grievances and Lawsuits "Privately and Independently."

For similar reasons, this Court should dismiss plaintiffs' claim that they were discriminated against by being denied access to the inmate grievance process and the courts. Plaintiffs claim that because they are blind, they cannot read and draft grievance and other legal documents "privately and independently," and cannot access the law library, without assistance from sighted inmates. Am. Compl. ¶¶ 33-40. The ADA itself does not contemplate that private and independent access to printed material is necessary; rather, it provides that a "qualified reader" is an acceptable auxiliary aid or service for the blind. 42 U.S.C. 12103(1)(B). The complaint offers no specific examples of why the offered accommodation of an inmate reader is not reasonable for any particular plaintiff.

Moreover, plaintiffs have pleaded no facts to show that their current access is not meaningful and effective. "[M]eaningful access and the question of whether accommodations are reasonable must be assessed through the prism of the prison setting." *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1268-70 (10th Cir. 2018). Courts have routinely found that where inmates

are given assistance with the grievance process and court proceedings from other inmates, the ADA is satisfied. *See id.* (finding no ADA violation where the inmate "had some degree of law library access, enough that he was able to pursue multiple lawsuits."); *Wells v. Thaler*, 460 F. App'x 303, 312-13 (5th Cir. 2012) (holding that "the existing accommodations were more than sufficient to give [plaintiff] effective and meaningful access to the law library" where another inmate could read to him and assist with court and other filings); *Mason v. Correctional Med. Servs., Inc.*, 559 F.3d 880, 887 (8th Cir. 2009) (holding that an inmate assistant who helped plaintiff with daily tasks, including grievances, was sufficient under the ADA). As argued above in § I.B, that plaintiffs currently have meaningful access is evident solely from the existence of the instant consolidated lawsuits and the fact that they have filed numerous grievances. *See* Am. Compl. ¶¶ 33, 36-38, 40-41; *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("Because he is currently exercising his right to petition the government for redress of grievances through this lawsuit, he has not been harmed."). That plaintiffs desire different auxiliary aids or services than they are currently provided has no bearing on whether defendants complied with the ADA. *See Miller*, 288 F. App'x at 902.

Furthermore, plaintiffs have not even specified what auxiliary aids or services they believe could provide them with more meaningful access, whether they ever made a request for such aids or services to defendants, and whether defendants denied such requests. Instead, they simply and insufficiently declare the purported ineffectiveness of their current access and entitlement to unidentified alternative modifications. This does not suffice to plausibly plead that defendants denied them effective access. What is more, there is no reason to assume that plaintiffs could effectively use other accommodations, or that they, without any formal legal training, would have more meaningful access to the legal process with independent legal research capabilities or increased law library access.

Additionally, plaintiffs have not sufficiently pleaded *any* actual injury arising from their purported ineffective access. *See Levy*, 104 F. Supp. 2d at 544.  Rather, they claim, with no specificity whatsoever, that they have had "grievances and lawsuits dismissed, Am. Compl. ¶ 41, and like the previous claim, they speculate about a risk of exposure to "extortion, sexual exploitation, and violence." Am. Compl. ¶ 39.  But yet again they offer no factual information about these purportedly dismissed grievances and lawsuits—including which plaintiff filed them and why they were dismissed—and glaringly, fail to cite even a single instance where a plaintiff suffered from extortion, sexual exploitation, and violence as a result of relying upon another inmate to assist him with the grievance process or a court filing. These critical failures warrant dismissal of this claim.

### C.      Denied Ability to "Read and Write Mail Privately and Independently."

Similar to the above claims, plaintiffs claim discrimination because they have to "rely on sighted inmates to use the mail services" and cannot "read and write mail privately and independently."  Am. Compl. ¶ 68.  As noted above in § II.C and D, the ADA authorizes the use of "qualified readers" and "other effective methods of making visually delivered materials available to individuals with visual impairments." 42 U.S.C. 12103(1)(B).  Based upon this express language, courts have rejected claims that inmates are entitled to read and write mail "privately and independently" without the assistance of other individuals.  *See, e.g., Wells v. Thaler*, 460 F. App'x 303, 310, 313 (5th Cir. 2012). Because plaintiffs' preferred accommodation is not the benchmark of what is required under the disability laws, "[t]he failure to provide [plaintiffs] with the specific accommodations of [their] choosing does not violate the ADA or the Rehabilitation Act." *Lopez v. Kirkpatrick*, 505 F. App'x 58, 59 (2d Cir. 2012).  Rather, plaintiffs must show that their existing access is inadequate, *Wells*, 460 F. App'x at 313, and they have failed to do so

because they have not pleaded any plausible allegations showing a denial of adequate access to the mail system.

Moreover, plaintiffs have yet again failed to plead *any* actual injury resulting from their purported inadequate access to the mail system. Instead, they again speculate that relying upon other inmates makes them "vulnerable to exploitation, extortion, and violence" and makes them "feel unsafe." Am. Compl. ¶¶ 69, 70. This is simply insufficient, and courts have dismissed cases with far less hypothetical injuries. *See Chase v. O'Malley*, 466 F. App'x 185, 187 (4th Cir. 2012) (dismissing claim for failure to allege actual injury where plaintiff claimed prison officials actually destroyed his mail); *Jones v. Bishop*, No. CV CCB-16-2893, 2018 WL 1521874, at *15 (D. Md. Mar. 28, 2018) (dismissing claim for mail tampering because plaintiff failed to "identify the nature of the mail, the individuals involved, particularize how they have 'tampered' with his mail, or identify any actual harm."). Plaintiffs' ADA and Rehab Act claims based upon a purported denial of access to the mail system must therefore be dismissed.

### D.     Denied Access to Unspecified Work and Educational Programs.

Plaintiffs further claim they are denied access to some work and educational programs that offer higher pay, training, and more diminution credits, such as through Maryland Correctional Enterprises. Am. Compl. ¶¶ 48-50, 54-56.  They claim they have been denied placement in, or were removed from, programs based upon "unfounded safety concerns and stereotypes," and have been "relegated to jobs that pay less and offer fewer diminution credits and opportunities for vocational training."  Am. Compl. ¶ 49.

In order to maintain such a claim, plaintiffs must sufficiently plead that they are qualified for the benefit in question, i.e., a specific program, and that they were excluded "due to discrimination solely on the basis of the disability." *Doe v. University of Md. Med. Sys. Corp.*, 50

F.3d at 1265. An individual is not qualified if he or she "poses a significant risk to the health or safety of others by virtue of the disability that cannot be eliminated by reasonable accommodation. *Id*. "Legitimate physical qualifications may in fact be essential to participation in particular programs." *Knapp v. Northwestern Univ.*, 101 F.3d 473, 482 (7th Cir. 1996); *see also* 34 C.F.R. § Pt. 104, App. A, subpt. A(5) (noting that a blind person who possesses all of the qualifications for driving a bus except sight is not qualified to be a bus driver).

Plaintiffs have not met their pleading burden. They have failed to identify what programs they applied for, how they are qualified for such programs, or at minimum, how they would be qualified with reasonable accommodations. They have failed to identify the specific bases for each of their denials or exclusions from programs. They have also failed to plead any facts to show that they were excluded from such programs "solely on the basis" of their blindness, *Doe*, 50 F.3d at 1265, and they have failed to allege any actual injury resulting therefrom. In fact, the complaint makes clear that plaintiffs were given the same educational opportunities as other inmates, and were only excluded from certain work programs on the basis of safety concerns or physical constraints. Am. Compl. ¶¶ 49, 54-55. *Cf. Muhammad v. Kaloroumakis*, No. Civ. CCB-14-1794, 2015 WL 1712594, at *1 (D. Md. Apr. 14, 2015) (denying a motion to dismiss where a blind plaintiff sufficiently alleged he was excluded from *all* prison work assignments); *Kogut v. Ashe*, 592 F. Supp. 2d 204, 207 (D. Mass. 2008) (denying motion to dismiss where disabled plaintiff sufficiently alleged he was excluded from the facility's entire good-time work program). Plaintiffs have therefore failed to plead a plausible claim that they were denied access to a program for which they were qualified on the basis of their blindness.

### E.     Denied Opportunity to Navigate the Prison Without Escort.

Plaintiffs further base their ADA claim on their inability to freely and independently navigate the prison facility. Am. Compl. ¶¶ 60-62. They claim the "walker program," in which they are assigned a paid inmate to serve as a guide and escort throughout the facility, deprives them "of the independence sighted inmates enjoy" to "choose which part of RCI to visit." *Id*. They claim that with "white canes"[6] and mobility training, they could navigate the facility freely. *Id*. However, as with their previous ADA claims, they fail to plausibly demonstrate how the walker program is inadequate to enable them to navigate the facility.  In fact, it is well-settled that providing another individual, including an inmate, to serve as a walker or escort *is* reasonable and appropriate under the ADA.  *See Mason*, 559 F.3d at 887 (dismissing ADA claim where plaintiff had another inmate serve as a facility escort, despite the escort's sporadic unavailability); *Colon*, 2017 WL 4157372, at *7 (holding it reasonable for inmates and staff to escort blind inmates even where plaintiff was attacked and injured during one such escort); *Havens*, 897 F.3d at 1269 (holding plaintiff's access to prison facility meaningful where he was able to travel around the facility with the assistance of staff).

Furthermore, plaintiffs again fail to identify any actual resulting injury and instead continue to surmise about the speculative risk of "extortion, exploitation, and violence" they claim is inherent in relying upon another inmate's assistance.  They also collectively claim, again in conclusory fashion, that they have been "threatened" by their walkers.  Am. Compl. ¶ 63. Yet they fail to specify which plaintiffs have been so threatened and the nature of such threats. And they have not pleaded any actual harm or injury caused by their walkers. To the contrary, even after

---

[6] A "white cane," also known as a "probing cane," is used to assist mobility and navigation, rather than for stability.

they "complained about their walkers' behavior," the walkers never caused any actual harm or injury. Am. Compl. ¶¶ 63-65. That is why they are forced to speculate about a theoretical risk.

Nor is there reason to assume that the white canes and mobility training plaintiffs desire will provide them the ability to independently navigate the facility. A prison facility, with its array of security features, poses unique obstacles for independent navigation by the blind. More importantly, allowing blind inmates to walk unescorted around a prison raises safety and security concerns that may not exist outside the prison context. *See Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996) ([I]n the prison setting . . . [s]ecurity concerns, safety concerns, and administrative exigencies would all be important considerations to take into account."). Indeed, prison officials are accorded great deference in the administration and management of their facilities. *Torcasio v. Murray*, 57 F.3d 1340, 1345-46, 1355 (4th Cir. 1995). Although the steps taken by DOC officials to provide plaintiffs with access to RCI's programs and services may "not satisfy all of [plaintiffs'] requests," *id.* at 1356, those steps "certainly could have been viewed by a reasonable prison administrator as a satisfactory accommodation of whatever right [the plaintiffs] had to modification of prison facilities" and policies. *Id.*

Curiously, plaintiffs seem to believe they would be safer if allowed to travel the prison alone and unescorted, than with an assigned escort. However confident plaintiffs are in their own abilities, it is not unreasonable of Department officials, who "have the obligation to consider security and other factors unique to the prison environment in their decision-making," *Havens*, 897 F.3d at 1270, and who are "accorded . . . considerable discretion" in doing so, *id.*, to determine that the walker program was an appropriate mechanism for providing blind inmates with access to the institution's services and programs, while protecting institutional safety and security.

F.    **Denied Single Celling and Housing Status of Their Choosing.**

26

Plaintiffs claim they are discriminated against because blind inmates are "segregated" at RCI and thus do not have access to services and programs available at other facilities. Am. Compl. ¶¶ 74-76.  They further claim that housing them in double cells with other inmates exposes them to a risk of "abuse and exploitation," and that they have been denied the accommodation of single-cell housing. Am. Compl. ¶¶ 79-82.

Inmates are not entitled to be housed in any particular facility or cell, and are not entitled to any particular security classification. *Spivey v. Department of Pub. Safety & Corr. Servs.*, No. Civ. JFM-09-440, 2009 WL 5177285, at *3 (D. Md. Dec. 18, 2009); *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004); *Montanye v. Haymes,* 427 U.S. 236, 242 (1976); *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) ("An inmate does not have a right to be placed in the cell of his choice."); *Hewitt v. Helms,* 459 U.S. 460, 468 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). Thus, to maintain the instant claim, plaintiffs must plausibly demonstrate that their housing and cell assignments were ineffective, i.e. denied them access to services and programs.  Plaintiffs fail to do this.

For instance, plaintiffs have not pleaded any disparate or discriminatory treatment from other inmates at RCI regarding their housing and cell assignments.  They have not pleaded any facts regarding what programs at other facilities they are qualified to participate in but have been denied access to.  They have not even pleaded that they requested access to any particular program available at another facility.  And they certainly have not pleaded the requisite intentional conduct. They cannot meet their burden to plead a plausible claim that their housing assignments are in any way discriminatory with this paucity of information.

Although plaintiffs claim that they have been discriminated against because they have been denied single-cell housing, they concede that some of them are currently housed in single cells. Am. Compl. ¶¶ 82-83. Moreover, they have failed to plead any basis for why and how their current cell assignments are ineffective and whether they requested and were denied reasonable accommodations. Plaintiffs have not stated a claim for any discrimination in their housing and cell assignments. Accordingly, this Court should dismiss plaintiffs' ADA and Rehab Act claims.

## CONCLUSION

The motion to dismiss should be granted, and plaintiffs' complaint should be dismissed.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/_____
STEPHANIE LANE-WEBER
TERESA M. KELLY
Assistant Attorneys General
St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland  21202
(410) 576-7962 (Telephone)
(410) 576-6880 (Telefax)
E-mail: tkelly@oag.state.md.us
E-mail: slaneweber@oag.state.md.us

Attorneys for Defendants