**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STEVEN BROWN, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | CIVIL ACTION NO. RDB-16-945 |
| DEPARTMENT OF PUBLIC | * | |
| SAFETY AND CORRECTIONAL | * | |
| SERVICES, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLANTIFFS' MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT IN SUPPORT OF THE UNDUE BURDEN, FUNDAMENTAL
ALTERATION, AND DIRECT THREAT AFFIRMATIVE DEFENSES**

Plaintiffs, by the undersigned counsel, move *in limine* to preclude Defendants, the

Department of Public Safety and Correctional Services ("DPSCS") and Robert L. Green

(collectively, "Defendants"), from introducing evidence or offering argument at trial related to

the affirmative defenses of undue burden, fundamental alteration, and direct threat.

Under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA,"

or "Title II"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section

504"), these are affirmative defenses that the defendants must plead and prove. *Nat'l Fed. of the

Blind v. Lamone*, 813 F.3d 494, 508 (4th Cir. 2016); *Constantine v. Rectors & Visitors of George

Mason Univ.*, 411 F.3d 474, 489 (4th Cir. 2005); *Tyner v. Brunswick Cty. Dep't of Soc. Servs.*,

776 F. Supp. 2d 133, 152 (E.D.N.C. 2011); *see Bradshaw v. Hilco Receivables*, 725 F. Supp. 2d

532, 535–36 (D. Md. 2010) (applying the *Twombly* and *Iqbal* pleading standard to affirmative

defenses).

Defendants failed to plead any affirmative defenses in this case. Moreover, they have not produced evidence in response to Plaintiffs' discovery requests that any of the relief Plaintiffs seek—accessible mail, library, and grievance services and the general provision of effective communication through appropriate auxiliary aids and services; equal access to institutions other than Roxbury Correctional Institution, jobs, education, and other programs and services, with reasonable modifications when necessary; and an equal opportunity to be housed safely and to navigate Defendants' facilities independently and safely—would present an undue burden or fundamental alteration to Defendants' programs and services, or a direct threat to any person. The Court should therefore preclude Defendants from resurrecting any such arguments before the jury.

## **ARGUMENT**

### I.    **Affirmative Defenses Under Title II and Section 504.**

The federal disability rights laws recognize that covered entities, in allocating resources and designing services, programs, and activities, often fail to consider their obligations to provide persons with disabilities equal opportunities to participate. To remedy this common oversight, the ADA and its implementing regulations require covered entities to take affirmative steps to remove barriers to their programs and services for people with disabilities, first, by making "reasonable modifications in policies, practices, or procedures when . . . necessary to avoid discrimination on the basis of disability," 28 C.F.R. § 35.130(b)(7), and second, by facilitating effective communication by "furnish[ing] appropriate auxiliary aids and services," *id.* § 35.160(b)(1). A defendant can avoid such obligations only by proving: (1) that a reasonable modification would "fundamentally alter the nature of the service, program, or activity" to which access is being provided, 28 C.F.R. § 35.130(b)(7); (2) that the actions needed to provide

effective communication create a fundamental alteration or pose "undue financial and administrative burdens," *id.* § 35.164; or (3) that the person with a disability "poses a direct threat to the health or safety of others," *id.* § 35.139(a). A "direct threat" is defined as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." 42 U.S.C. § 12182(b)(3); *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 442 (1979) (recognizing the fundamental alteration defense under Section 504); 28 C.F.R. pt. 35 app. A, at 457, 463 (explaining that the undue burden and fundamental alteration defenses in Title II are based on caselaw applying Section 504).

A defendant cannot satisfy the affirmative defenses of fundamental alteration or undue burden without evidence that it made an individualized and documented determination that the requested relief would constitute such. 28 C.F.R. § 35.164 (Before dismissing relief under the ADA as a fundamental alteration or undue burden, "the head of the public entity or his or her designee" must "consider[] all resources available for use in the funding and operation of the service, program, or activity" and must document their decision "by a written statement of the reasons for reaching that conclusion."); *see, e.g., Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 78 (2d Cir. 2016) ("Title II of the ADA . . . requires that once a disabled prisoner requests a non-frivolous accommodation, the accommodation should not be denied without an individualized inquiry into its reasonableness."); *Chisolm v. McManimon*, 275 F.3d 315, 328, 331–32 (3d Cir. 2001) (rejecting defendants' undue burden defense because "there [wa]s no indication that [defendants] issued written statements of its reasons for denying [plaintiff]'s requested auxiliary aids"); *Williams v. Hayman*, 657 F. Supp. 2d 488, 500 n.8 (D.N.J. 2008) ("Because Defendants have offered no such written statement, this 'lone regulatory limitation' on their duty to provide

[plaintiff] comparable access to services and programs at [the public entity] as is afforded to non-disabled inmates is inapplicable to this case." (quoting *Chisolm*, 275 F.3d at 325)); *Ewbank v. Gallatin Cty. Ky.*, No. Civ.A. 03-156-DLB, 2006 WL 197076, at *8 (E.D. Ky. Jan 17, 2006) (granting Plaintiffs' motion for summary judgment in part because Defendants failed to submit a written statement demonstrating that they had analyzed the cost of the requested modification on their overall budget); *see also Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 944–46 (N.D. Ind. 2009) (holding that public entity must demonstrate that it considered all available resources, including extrabudgetary funding, to carry its burden of proof on an undue burden defense).

Similarly, the ADA regulations set forth specific actions a defendant must take to prove that a person with a disability poses a direct threat to others.

> In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

28 C.F.R. § 35.139(b). The entity bears a "heavy burden" to prove a direct threat. *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007); *see A Helping Hand, LLC v. Baltimore County*, Civ. No. CCB02-2568, 2006 WL 2067942, at *1 n.2 (D. Md. July 14, 2006). A public entity "must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 35.130(h). It is insufficient as a matter of law for a public entity to rely on general safety and administrative concerns unconnected to the specific situation of the disabled person to deny equal access. *Id.*; *see also A Helping Hand*, 2006 WL 2067942, at *1 (granting a motion *in*

*limine* to exclude evidence of direct threat when the public entity publicly relied on stereotypes about methadone users to prohibit the establishment of a methadone clinic).

## II.     Defendants Failed to Plead or Produce Evidence of Undue Burden, Fundamental Alteration, or Direct Threat.

Defendants failed to plead or produce evidence to support any affirmative defenses. Defendants never filed an Answer in this case. Their first responsive pleading, a motion to dismiss, ECF No. 100, filed over two years after Plaintiffs filed their First Amended Complaint, ECF No. 20, makes no mention of an affirmative defense aside from a single passing quotation of a Fourth Circuit decision discussing only the existence of the undue burden and fundamental alteration defenses, but not arguing its application in the present case. Defs.' Mem. Supp. Mot. Dismiss 26 ("Defs.' Mem.") (quoting *Miller v. Hinton*, 288 F. App'x 901, 902 (4th Cir. 2008)), ECF No. 100-1. Discussion of fundamental alteration, undue burden, and direct threat in Defendants' summary judgment briefing is similarly limited. Defs.' Opp'n Mot. Summ. J. 7 ("Defs.' Opp'n"), ECF No. 183 (including same passing quote from *Miller*). Defendants have therefore waived these affirmative defenses. *See Ga. Pac. Consumer Prod., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir. 2013) (parties waive affirmative defenses by failing to timely raise them).

Instead of pleading and supporting these defenses with specific facts, Defendants recite the term "security" in their briefing as though such an incantation exempts them from the law's pleading requirements and burdens of proof. *See, e.g.*, Defs.' Mem. 34 (asserting, without further elaboration, that "[a] prison facility, with its array of security features, poses unique obstacles for independent navigation by the blind."); Defs.' Opp'n 4, 6, 19 (arguing that this Court should take security into consideration in determining which reasonable modifications Plaintiffs are entitled to but declining to identify any security risks posed by Plaintiffs' proposed modifications and

auxiliary aids). These generalizations and scattershot invocations of security are precisely the types of arguments precluded by the requirement that a public entity bears the burden to plead and prove undue burden, fundamental alteration, and direct threat in the specific circumstances of the Plaintiff and the case.

Furthermore, Plaintiffs would be unfairly prejudiced were Defendants permitted to assert any of these affirmative defenses at trial for the first time. Parties are required to disclose "all documents . . . [they] may use to support [their] claims or defenses." Fed. R. Civ. P. 26(a). Rule 37(c)(1) requires that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In response to Plaintiffs' discovery requests, Defendants failed to identify any evidence that would support any affirmative defenses or even their entitlement to assert the undue burden or fundamental alteration defenses in the first instance. When asked to disclose the "policies, practices, and/or procedures, if any, DPSCS uses to determine and document whether an auxiliary aid/service, accommodation, and/or modification for a person with a disability committed to DPSCS custody is effective, reasonable, a direct threat, an undue burden, or a fundamental alteration," Defendants responded by referral to documents that in some cases did not address disability at all and in all cases did not address any process for individually evaluating auxiliary aids or reasonable accommodations or documenting any bases for denying them under the ADA. Ex. 1, DPSCS's Suppl. Resp. Brown Interrog. No. 11 (Jan. 18, 2019) (referring to DPSCS's policies on Inmate Personal Property, Contraband Criminal Violations, and Medical Evaluations Manual); *accord* Ex. 2, DPSCS's Resp. Snead Req. Prod. No. 4 (Nov. 14, 2018). Defendants' response to Plaintiffs' request for "[a]ll procedures, forms, and/or

policies . . . to request modifications, accommodations, or auxiliary aids/services, including but
not limited to those for determining and documenting . . . whether requests for auxiliary
aids/services, accommodations, and modifications . . . present a direct threat, undue burden,
and/or fundamental alteration" similarly failed to disclose any documents supporting an
affirmative defense. Ex. 3, DPSCS's Suppl. Resp. Brown Req. Prod. No. 8 (Jan. 17, 2019). The
only documents produced in response to Plaintiffs' discovery requests that refer to the ADA
affirmative defenses at all are the ADA Executive Directives, which simply note the existence of
the defenses, not their application to the case at hand. Ex. 4, BROWN 2284–87, at 2286 ("Under
Title II — *Public Access*, making reasonable modifications in a policy, practice, or procedure
that denies equal access to individuals with disabilities, unless such modifications would result in
a fundamental alteration in the program, or cause undue financial or administrative burden to the
Department."); Ex. 5, BROWN 3168–71, at 3170 (same).

Defendants have failed to produce any documentation by "the head of the public entity or
his or her designee . . . considering all resources available for use in the funding and operation of
the service, program, or activity" explaining the reasons for rejecting a requested modification or
auxiliary aid or service as a fundamental alteration or undue burden. *See* 28 C.F.R. § 35.164. Such
documentation would have been responsive to Plaintiffs' discovery requests, including:

> [a]ll requests, formal and informal, by blind people committed to DPSCS custody
> for auxiliary aids and/or services, modifications, and/or accommodations with
> respect to any DPSCS program, service, or activity, and all documents concerning
> the evaluation and decisions on such requests, including but not limited to whether
> the requested aids/services or modifications/accommodations are effective and
> reasonable, or present direct threats, undue burdens, and/or fundamental alterations.

Ex. 6, Snead Req. Prod. No. 6. Nor have Defendants described any such consideration given to
specific auxiliary aids in response to an interrogatory asking for information on "any restriction
on their use and the reason for such conditions." *See* Ex. 7, DPSCS's Suppl. Resp. Snead

Interrog. No. 18 (Mar. 13, 2019) (stating that tape recorders, audio recorders, and cameras are prohibited without stating why, and that certain other auxiliary aids have not been considered).

Defendants similarly failed to produce any evidence that they carried out individualized assessments required to support the direct threat affirmative defense, even though such evidence would also have been responsive to these discovery requests. Allowing Defendants to introduce evidence at trial that they failed to disclose during discovery would be highly prejudicial to Plaintiffs.

Because Defendants failed to plead any affirmative defenses or to produce evidence supporting them, they should be precluded from asserting or attempting to support such defenses for the first time at trial. This includes, but is not limited to, eliciting testimony or offering evidence regarding the cost of Plaintiffs' proposed modifications and auxiliary aids and services, their effects on staffing or general procedures, and whether they would pose a safety threat. Such evidence is relevant only to these affirmative defenses and should not be offered where, as here, these defenses have been waived.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court preclude evidence and argument at trial in support of any affirmative defenses that Plaintiffs' requested relief would present an undue burden, fundamental alteration, or direct threat.

Respectfully submitted,

_____/s/_____                          _____/s/_____
Stephen Z. Meehan (Federal Bar No. 23915)          Eve L. Hill (Federal Bar No. 19938)
Damien Dorsey (Federal Bar No. 19194)              Jessica P. Weber (Federal Bar No. 17893)
Prisoner Rights Information System of MD, Inc.      Abigail Graber (Federal Bar No. 19727)
P.O. Box 929                                       James T. Fetter (Federal Bar No. 20727)
Chestertown, Maryland 21620                        Brown, Goldstein & Levy, LLP
(410) 528-1400 (phone)                             120 E. Baltimore Street, Suite 1700
(410) 528-1550 (fax)                               Baltimore, Maryland 21202
smeehan@prisminc.org                               (410) 962-1030 (phone)
ddorsey@prisminc.org                               (410) 385-0869 (fax)
                                                   ehill@browngold.com
                                                   jweber@browngold.com
                                                   agraber@browngold.com
                                                   jfetter@browngold.com

*Attorneys for Plaintiffs*

Date: May 13, 2019